NANCY A. MITCHELL *(pro hac vice pending)*
MARIA J. DICONZA *(pro hac vice pending)*
GREENBERG TRAURIG, LLP
The MetLife Building
200 Park Avenue
New York, New York 10166
Telephone: 212-801-9200
Facsimile: 212-801-6400
Email: mitchelln@gtlaw.com
      diconzam@gtlaw.com

GREGORY E. GARMAN, NV Bar # 6654
THOMAS H. FELL, NV Bar # 3717
TERESA M. PILATOWICZ, NV Bar # 9605
GORDON SILVER
3960 Howard Hughes Parkway, 9th flr.
Las Vegas, Nevada 89169
Telephone: 702-796-5555
Facsimile: 702-369-2666
Email: ggarman@gordonsilver.com
      tfell@gordonsilver.com
      tpilatowicz@gordonsilver.com

*Proposed Counsel for the Debtors
and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>TELEXFREE, LLC,<br><br>☐ Affects this Debtor<br>☒ Affects all Debtors<br>☐ Affects TELEXFREE, INC.<br>☐ Affects TELEXFREE FINANCIAL, INC | Case No.: BK-S-14-12524-abl<br>Chapter 11<br><br>**[PROPOSED]**<br>**Jointly Administered with:**<br><br>14-12525-abl   TelexFree, Inc.<br>14-12526-abl   TelexFree Financial, Inc<br><br>Date: OST REQUESTED<br>Time: OST REQUESTED |

### EMERGENCY MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO HONOR CREDIT CARD TRANSACTIONS, CHARGEBACKS, DISCOUNTS AND COMMISSIONS IN THE ORDINARY COURSE OF BUSINESS

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**")[1] hereby move the Court (the "**Motion**") pursuant to sections 105(a), 363 and 553 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), for entry an order authorizing the Debtors, in their sole discretion, to honor credit card transactions, chargebacks,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: TelexFree, LLC (0853), TelexFree, Inc. (1309) and TelexFree Financial, INC (7555). The Debtors' business address is 225 Cedar Hill Street, Suite 200, Marlborough, Massachusetts 01752.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-001/2260735

discounts, and commissions according to the terms and conditions of the agreements governing credit card uses. In support of this Motion, the Debtors respectfully state as follows:

## Status of the Case

1. On April 13, 2014 (the "**Petition Date**"), the Debtors commenced these cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner and a creditors' committee has not yet been appointed in these Chapter 11 Cases.

## Jurisdiction, Venue, and Statutory Predicates

4. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief sought herein are sections 105(a), 363 and 553 of the Bankruptcy Code.

6. Pursuant to Local Rule 9014.2, the Debtors consent to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Background

7. TelexFree, LLC, a Nevada limited liability company ("**TelexFree Nevada**"), TelexFree, Inc., a Massachusetts corporation ("**TelexFree Massachusetts**") and TelexFree Financial, Inc, a Florida corporation ("**TelexFree Florida**" and together with TelexFree Massachusetts and TelexFree Nevada, "**TelexFree**," the "**Debtors**" or the "**Company**") are a telecommunications business that uses multi-level marketing to assist in the distribution of voice over internet protocol ("**VoIP**") telephone services. TelexFree's retail VoIP product,

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-001/2260735

2

99TelexFree, allows for unlimited international calling to approximately seventy countries for a flat monthly rate of $49.90. Customers of the Debtors' VoIP product ("**Customers**") used approximately 11 million minutes of the 99TelexFree VoIP service in February 2014. Since 99TelexFree was introduced in 2012, Customer usage increased on a monthly basis until March 2014.

8. TelexFree is operated as a multi-level marketing company, and currently has over 700,000 associates or promoters (the "**Promoters**") worldwide. Prior to the filing of these Chapter 11 Cases, TelexFree compensated Promoters for the sales of the VoIP product, the placing of advertisements and the recruitment of other Promoters down line. Because questions were raised about its compensation plan, the Company on March 9, 2014, discontinued its original compensation plan (the "**Original Comp Plan**") and replaced the Original Comp Plan with a revised compensation plan (the "**Revised Comp Plan**" and together with the Original Comp Plan, the "**Pre-Petition Comp Plans**"). At the time of the roll-out of the Revised Comp Plan, the Company decided to honor certain discretionary payments to Promoters under the Original Comp Plan. These discretionary payments quickly became a substantial drain on the Company's liquidity. The Company discontinued the Pre-Petition Comp Plans and ceased making discretionary payments under the Original Comp Plan prior to the Petition Date.

9. The Company believes the sales of the 99TelexFree product, the TelexFree "app," and other new products will ultimately prove successful and profitable. The Company is struggling, however, with several factors that required it to seek chapter 11 protection by filing these Chapter 11 Cases. First, the Company experienced exponential growth in revenue between 2012 and 2013 (from de minimus amounts to over $1 billion), which put tremendous pressure on the Company's financial, operational and management systems. Second, although the Company revised its Original Comp Plan in order to address certain questions that were raised regarding such plan, the Company believes that the Pre-Petition Comp Plans need to be further revised. Finally, the trailing liabilities arising from the Original Comp Plan are difficult to quantify and have resulted in substantial asserted liabilities against the Company, a number of which may not be valid.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-001/2260735

3

10. As a result, the Company filed these Chapter 11 Cases to obtain the breathing room to address its operational and regulatory issues, revise the Pre-Petition Comp Plans, and quantify and address the claims against it. The Debtors believe that a restructuring of its debt, adoption of a post-petition revised compensation plan, unveiling of new products (including the TelexFree app), and return to growing its Customer base will allow the Company to realize its full potential and generate significant value for its constituents.

11. A detailed factual background of the Debtors' businesses and operations, as well as the events precipitating the commencement of these Chapter 11 Cases, is more fully set forth in the *Omnibus Declaration of William H. Runge III in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.

## Relief Requested

12. In the normal course of business, approximately twenty-five percent (25%) of the Debtors' total sales are settled through credit card transactions. During the post-petition period, the Debtors expect to continue accepting credit cards as a source of payments for purchases in the normal course of their day-to-day operations. By this Motion, the Debtors seek entry of an order pursuant to sections 105(a), 363 and 553 of the Bankruptcy Code authorizing the Debtors to continue to honor certain credit card transactions, chargebacks, discounts and related expenses.

## Basis for Relief Requested

A. **Debtors' Credit Card Processors**

13. The Debtors have approximately four (4) separate agreements with a number of credit card processors, including, but not limited to, Propay Inc., Phoenix Payments LLC, Allied Wallet and Vantage Payments (collectively, the "**Debtor Credit Card Processors**"), governing the terms and conditions of credit card payments, discounts, and commissions, all as more specifically described herein (collectively, the "**Debtor Agreements**").

14. The Debtor Credit Card Processors provide the Debtors with credit card transaction processing services for all credit cards accepted by the Debtors, including Visa,

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-001/2260735

Mastercard and American Express. Pursuant to the Debtor Agreements, subject to certain fees, commissions, and other costs of administration in processing credit card transactions, the Debtors are permitted to accept the credit cards for purchases in connection with the Debtors' businesses, including access to the Debtors' websites.

15. Honoring the credit card charges and the commensurate expenses incurred pursuant to the Debtor Agreements in the ordinary course of the Debtors' business operations is absolutely necessary in the website-based business context. Without the ability to assure the Debtor Credit Card Processors that transactions will continue to occur in the ordinary course after the Petition Date, the Debtor Credit Card Processors may attempt to adjust the reserve amounts and the timing of payments to the Debtors. Furthermore, under sections 363 and 553 of the Bankruptcy Code, the Debtor Credit Card Processors are likely to seek a setoff of all such charges against funds currently in their possession that they would otherwise remit timely to the Debtors, rather than maintain the *status quo* and continue normal operations during these Chapter 11 Cases.

16. As a majority of the Debtors' revenues are generated from website-based purchases, the use of credit cards is inextricably linked to the Debtors' ability to continue normal postpetition operations. Even a slight delay in implementing the relief requested herein could cause the Debtor Credit Card Processors to refuse to do business with the Debtors on the terms and basis of their ordinary course relationships, which could have a significant and material adverse affect on the Debtors' business as the Debtors would be forced to identify and obtain new credit card processors.

17. The relief requested herein with respect to authorizing the Debtors to honor credit card charge backs, commissions and discounts in the ordinary course of business, including any pre-petition amounts that may currently be outstanding, is necessary to ensure and maintain credit card processing and the uninterrupted flow of revenue.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-001/2260735

5

18. The Court may authorize the Debtors to honor any outstanding obligations due to the Debtor Credit Card Processors under Bankruptcy Code section 363(b).[2] That section provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b). Under that section, a court may authorize a debtor to honor certain prepetition obligations. *See Ionosphere Clubs*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing payment of prepetition claims where debtors articulate "some business justification, other than the mere appeasement of major creditors"); *see also In re James A. Phillips., Inc.*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (authorizing, pursuant to Bankruptcy Code section 363, a contractor to pay prepetition claims of some suppliers who were potential lien claimants, because payments were necessary for general contractors to release funds owed to debtors).

19. In addition, the Court's general equitable powers are codified in section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175. Under Bankruptcy Code section 105(a), a court "can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).

20. The Debtors strongly believe that continuation of their existing relationships with the Debtor Credit Card Processors is imperative to their continued operation and chances to maximize value, and that honoring all of the Debtors' obligations due to the Debtor Credit Card Processors is essential to assure the maintenance of the value of their estates and critical to the continued uninterrupted receipt of normal operating revenue and that the Court should exercise its equitable power to grant the relief requested in this Motion.

---

[2] Nothing herein should be construed as a request to assume any Debtor Agreements with the Debtor Credit Card Processors under section 365 of the Bankruptcy Code.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-001/2260735

6

21. Further, the "necessity of payment" doctrine provides additional support for the relief requested in this Motion. The "necessity of payment" doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176; *see also In re Lehigh & New England Railway Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (the "necessity of payment" doctrine "teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization payment may be authorized even if it is made out of corpus"); *In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y. 1987). This doctrine is consistent with the paramount goal of Chapter 11, namely "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176; *see also Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (the debtor "once shut down . . . will lose much of its value. . . . Some priority to [the debtor's prepetition suppliers] may be essential to preservation of the business").

B. **Non-Debtor Credit Card Processors**

22. In addition to the Debtors' Agreements, certain of the Debtors' non-debtor affiliates (the "**Non-Debtor Affiliates**") have agreements with Argus Payments, a credit card processor (the "**Non-Debtor Credit Card Processors**", and together with the Debtor Credit Card Processors, the "**Credit Card Processors**"), governing the terms and conditions of credit card payments, discounts, and commissions, as more specifically described herein (the "**Non-Debtor Agreements**"). Like the Debtor Credit Card Processors, pursuant to the Non-Debtor Agreements, subject to certain fees, commissions, and other costs of administration in processing credit card transactions, the Debtors are permitted to accept the credit cards for purchases in connection with the Debtors' businesses, including the Debtors' websites.

23. The Non-Debtor Credit Card Processors process credit card transactions, chargebacks, discounts, and commissions resulting from purchases made from the Debtors' websites and other businesses. The resulting funds are then reconciled by the Non-Debtor Affiliates, which are then immediately transferred to the Debtors. Accordingly, as credit card transactions, chargebacks, discounts, and commissions are processed by the Non-Debtor Credit

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-001/2260735

7

Card Processors, it is absolutely necessary to the Debtors' ongoing business operations that the Non-Debtor Affiliates and the Non-Debtor Credit Card Processors be permitted to continue to operate pursuant to the Non-Debtor Agreements in the ordinary course of business.

24.  Non-Debtor Credit Card Processors may ultimately continue to operate in the ordinary course, as they are unaffected by these Chapter 11 Cases and, thus, do not require any additional approval to conduct business as normal or require additional reserves. However, out of an abundance of caution, the Debtors seek entry of an order authorizing the Debtors, in their sole discretion, to continue honoring, in the ordinary course, any terms relating to the Non-Debtor Credit Card Agreements and any credit card transactions, chargebacks, discounts, commissions and related expenses resulting from the Non-Debtor Agreements with the Non-Debtor Credit Card Processors.

### **Bankruptcy Rule 6003 Satisfied and Request for Waiver of Stay**

25.  The Debtors submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein and in the First Day Declaration, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

26.  Specifically, Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

FED. R. BANKR. P. 6003.

27.  One court in the Ninth Circuit has, in an unpublished opinion, addressed the "immediate and irreparable harm" language in the context of Bankruptcy Rule 6003. That courted noted "that Rule 6003 allows the court to authorize payments on prepetition debt if necessary to avoid immediate and irreparable harm, but does not require that such harm be to the bankruptcy estate. The court finds that a delay in payment would result in immediate and

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-001/2260735

8

irreparable harm to both the dairy farmers and the debtor, and for this reason authorizes payment now." *In re Humboldt Creamery, LLC*, 2009 Bankr. LEXIS 2477, 3 n. 3 (Bankr. N.D. Cal. Apr. 23, 2009). However, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle County*, 40 F.2d 645, 653-55 (3d Cir. 1994)

28. The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[an] order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtors' operations, going-concern value, and their efforts to pursue a sale or restructuring of their assets and liabilities.

29. Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

### Notice

30. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Nevada; (b) creditors holding the thirty (30) largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions; (c) those parties requesting notice pursuant to Rule 2002; (d) the Office of the United States Attorney General for the District of Nevada; (e) the Internal Revenue Service; (f) the Massachusetts Securities Division; (g) Nevada Department of Taxation, Bankruptcy Section; (h) Dept. of Employment, Training & Rehab, Employment Security Division; (i) the Securities and Exchange Commission; and (j) the Credit Card Processors. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given. As the Motion is seeking "first day" relief, within two (2) business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion in accordance with the Local Rules.

### No Prior Request

No prior request for the relief sought in this Motion has been made to this or any other court.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-001/2260735

9

## Conclusion

WHEREFORE, the Debtors respectfully request that this Court enter an order substantially in the form of the proposed order attached hereto as **Exhibit 1** granting the relief requested herein and that it grant the Debtors such other and further relief as is just and proper.

DATED this ___ day of April, 2014.

GORDON SILVER

By: _____
GREGORY E. GARMAN, ESQ.
THOMAS H. FELL, ESQ.
TERESA M. PILATOWICZ, ESQ.
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169

AND

NANCY A. MITCHELL *(pro hac vice pending)*
MARIA J. DICONZA *(pro hac vice pending)*
GREENBERG TRAURIG, LLP
The MetLife Building
200 Park Avenue
New York, New York 10166

*Proposed Counsel for the Debtors
and Debtors in Possession*

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-001/2260735

10