NANCY A. MITCHELL *(pro hac vice)*
JOSEPH P. DAVIS *(pro hac vice)*
MARIA J. DICONZA *(pro hac vice)*
GREENBERG TRAURIG, LLP
The MetLife Building
200 Park Avenue
New York, New York 10166
Telephone:  212-801-9200
Facsimile:  212-801-6400
Email: mitchelln@gtlaw.com
        diconzam@gtlaw.com

GREGORY E. GARMAN, NV Bar # 6654
THOMAS H. FELL, NV Bar # 3717
TERESA M. PILATOWICZ, NV Bar #9605
MARK WEISENMILLER, NV Bar #12128
GORDON SILVER
3960 Howard Hughes Parkway, 9th Flr.
Las Vegas, Nevada 89169
Telephone:  702-796-5555
Facsimile:  702-369-2666
Email:  ggarman@gordonsilver.com
        tfell@gordonsilver.com
        tpilatowicz@gordonsilver.com
        mweisenmiller@gordonsilver.com

*Proposed Counsel for the Debtors*
*and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

In re:

TELEXFREE, LLC,

☐ Affects this Debtor

☒ Affects all Debtors

☐ Affects TELEXFREE, INC.

☐ Affects TELEXFREE FINANCIAL, INC

Case No.: BK-S-14-12524-abl
Chapter 11

**[PROPOSED]**
**Jointly Administered with:**

14-12525-abl   TelexFree, Inc.
14-12526-abl   TelexFree Financial, Inc

Date:  OST REQUESTED
Time: OST REQUESTED

## MOTION FOR AN ORDER DETERMINING THAT: (I) PORTIONS OF THE TEMPORARY RESTRAINING ORDER ENTERED AT THE REQUEST OF THE SECURITIES AND EXCHANGE COMMISSION VIOLATE THE AUTOMATIC STAY OF 11 U.S.C. § 362(a); (II) PORTIONS OF THE TEMPORARY RESTRAINING ORDER ARE VOID; AND (III) THE DEBTORS ARE ENTITLED TO USE THEIR ASSETS IN <u>THE ORDINARY COURSE OF THEIR BUSINESS</u>

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

# **Table of Contents**

I. INTRODUCTION ................................................................................................ 2

II. JURISDICTION AND VENUE ........................................................................ 2

III. BACKGROUND FACTS ................................................................................ 3

    A.    The Chapter 11 Cases. ........................................................................ 3

    B.    The Debtors' Business Operations ..................................................... 4

    C.    The Events that Precipitated the Chapter 11 Cases. .......................... 5

    D.    The SEC Action. ................................................................................. 7

IV. LEGAL ARGUMENT .................................................................................. 10

    A.    The Debtors are Authorized to Operate Their Business in the Ordinary Course. 10

    B.    The Commencement of the Chapter 11 Cases Created Estates. ......... 10

    C.    The Debtors' Additional Obligations Upon Commencement of the Chapter 11 Cases. .......................................................................... 11

    D.    The Commencement of the Chapter 11 Cases Triggered the Automatic Stay of 11 U.S.C. § 362(a). ........................................... 11

    E.    The Debtors as Debtors-in-Possession are Fiduciaries for Their Estates. ............ 13

    F.    The Debtors as Debtors-in Possession are Required to Comply With all Applicable Laws and Regulations. ........................................... 14

    G.    The Police and Regulatory Exception of Section 362(b)(4). ............. 14

    H.    The Bankruptcy Court is Best Suited to Provide the Relief the SEC Seeks. ........ 25

V. CONCLUSION ............................................................................................... 29

# **TABLE OF AUTHORITIES**

**Cases**

Berg v. Good Samaritan Hosp., Inc. (*In re* Berg), 230 F.3d 1165 (9th Cir. 2000) ....................... 15

Black v. Bonnie Springs Family Ltd. (In re Black), 487 B.R. 202 (B.A.P. 9th Cir. 2013) ............ 2

Brock v. Morysville Body Works, Inc., 829 F.2d 383 (3rd Cir. 1987), *cert. denied*, 517 U.S. 1187, 116 S.Ct. 1673, 134 L.Ed.2d 777 (1996) ........................................................................ 2

Commodity Futures Trading Comm'n v. Co Petro Mfg., 700 F.2d 1279 (9th Cir. 1983) .............. ................................................................................................................. 16. 19, 23, 24

Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) ...................................................................................................................... 13

Devers v. Bank of Sheridan, Montana (In re Devers), 759 F.2d 751 (9th Cir. 1985) ................. 13

Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210 (9th Cir. 2002) ............................................. 12

Goodman v. Johnston Environmental Corp., 991 F.2d 613 (9th Cir. 1993) ............................... 12

Holta v. Zerbetz (In re Anchorage Nautical Tours, Inc.), 145 B.R. 637 (BAP 9th Cir. 1992) ..... 13

Hong Kong and Shanghai Banking Corp., Ltd. v. Simon (In re Simon), 153 F.3d 991 (9th Cir. 1998) ............................................................................................................................... 10

In re Apache Trading Group, Inc., 229 B.R. 891 (Bankr. S.D. Fla. 1999) ................................. 28

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

i

In re Chapman, 264 B.R. 565 (B.A.P. 9th Cir. 2001) .......................................... 15, 16

In re Chappel, 189 B.R. 489 (B.A.P. 9th Cir. 1995) .......................................... 10

In re CLE Corp., 59 B.R. 579 (Bankr. N.D. Ga. 1986) ...................................... 28

In re Crown Vantage, Inc., 421 F.3d 963 (9th Cir. 2005) ................................. 10

In re Dolen, 265 B.R. 471 (Bankr. M.D. Fla. 2001) ........................................... 2

In re First Alliance Mortgage Co., 263 B.R. 99 (B.A.P. 9th Cir. 2001) ............... 15, 17, 22, 23

In re Gruntz, 202 F.3d 1074, 1082 (9th Cir. 2000) ........................................... 12

In re Hentges, 351 B.R. 758 (Bankr. N.D. Okla. 2006) ...................................... 28

In re JLM, Inc., 210 B.R. 19 (B.A.P. 2d Cir. 1997) ........................................... 14

In re Lazar, 207 B.R. 668 (Bankr. C.D. Cal. 1997) ........................................... 14

In re Macke Int'l Trade, Inc., 370 B.R. 236 (B.A.P. 9th Cir. 2007) ...................... 27

In re Marciano, 446 B.R. 407 (Bankr. C.D. Cal. 2010) aff'd, 459 B.R. 27 (B.A.P. 9th Cir. 2011) aff'd, 708 F.3d 1123 (9th Cir. 2013) ............................................................ 28

In re Marciano, 459 B.R. 27, 46-47 (B.A.P. 9th Cir. 2011) aff'd, 708 F.3d 1123 (9th Cir. 2013) 26

In re Metro Transp. Co., 64 B.R. 968 (Bankr. E.D. Pa. 1986) ............................ 25

In re Schwartz, 954 F.2d 569 (9th Cir. 1992) .................................................. 12, 23

In re Shalan Enterprises, LLC, 2012 WL 1345328 (Bankr. C.D. Cal. Apr.17, 2012) ................. 13

In re Skinner, 917 F. 2d 444 (10th Cir. 1990) .................................................. 12

In re Sluggo's Chicago Style, Inc., 94 B.R. 625, 630 (B.A.P. 9th Cir. 1988) aff'd, 912 F.2d 1073 (9th Cir. 1990) ................................................................................. 14

In re Straightline Investments, Inc., 525 F.3d 870 (9th Cir. 2008) (citing 11 U.S.C. § 1108) ..... 10

In re Tucson Yellow Cab Co., 21 B.R. 166 (Bankr. D.Ariz. 1982) ........................ 25

In re Universal Life Church, Inc., 128 F.3d 1294 (9th Cir. 1997) ........................ 18

In re W.R. Grace & Co., 384 B.R. 678 (Bankr. D. Del. 2008) ............................. 25

Johnston v. Parker (In re Johnston), 308 B.R. 469 (Bankr. D. Ariz. 2003) ............. 2

Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178 (9th Cir. 2003) ...................... 12

NLRB v. 15th Ave. Iron Works, Inc., 964 F.2d 1336 (2d Cir. 1992) ..................... 16

NLRB v. Continental Hagen Corp., 932 F.2d 828 (9th Cir. 1991) ........................ 16, 17, 23

NLRB v. P*I*E Nationwide, Inc., 923 F.2d 506, 512 (7th Cir. 1991) ................... 17

Ohio v. Kovacs, 469 U.S. 274, 105 S. Ct. 705, (1985) ....................................... 16

Penn Terra Ltd. v. Dept. of Environ. Resources, 733 F.2d 267, 275 (3d Cir. 1984) ................... 17

Pruitt v. Chase Home Fin., LLC (In re Pruitt), 2011 Bankr. LEXIS 5661 (Bankr. E.D. Cal. July 1, 2011) ........................................................................................ 2

S.E.C. v. Towers Fin. Corp., 205 B.R. 27 (S.D.N.Y. 1997) ................................. 21

Schwartz-Tallard v. America's Servicing Co. (In re Schwartz-Tallard), 473 B.R. 340 (B.A.P. 9th Cir. 2012) ........................................................................................ 2

SEC v. Brennan, 230 F.3d 65 (2d Cir. 2000) .................................................. 16, 23

SEC v. First Financial Group of Texas, 645 F.2d 429 (5th Cir.1981) ................... 20

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

*Sec. & Exch. Comm'n v. First Fin. Grp. of Texas*, 645 F.2d 429 (5th Cir. 1981) ....................... 25

*Securities & Exchange Commission v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2nd Cir. 1971) ................................................................................................................................... 22

*State of Mo. v. U.S. Bankr. Court for E. D. of Arkansas*, 647 F.2d 768 (8th Cir. 1981) ............. 20

*Sternberg v. Johnston*, 582 F.3d 1114 (9th Cir. 2009)..................................................................... 2

*Thompson v. Margen (In re McConville) cert. denied*, 522 U.S. 966, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997) ................................................................................................................................. 13

*Thompson v. Margen (In re McConville)*, 110 F.3d 47 (9th Cir. 1997)........................................ 13

*United States Dep't of Housing & Urban Dev't v. Cost Control Marketing & Sales Mgm't*, 64 F.3d 920 (4th Cir. 1995) ............................................................................................................. 2

*United States v. Commonwealth Cos. (In re Commonwealth Cos.)*, 913 F.2d 518 (8th Cir. 1990) ....................................................................................................................................................... 25

*United States v. Delta Distributors Co., Inc.*, 1996 WL 460112 (S.D.W. Va. June 21, 1996)....... 2

*Wolf v. Weinstein*, 372 U.S. 633, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963) ....................................... 13

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610 (9th Cir. 1988)................ 13

**Statutes**

11 U.S.C. § 101(5) ............................................................................................................................ 4

11 U.S.C. § 105 ......................................................................................................................... 12, 25

11 U.S.C. § 105(a) ............................................................................................................................ 2

11 U.S.C. § 157(b)(2)(A)................................................................................................................... 2

11 U.S.C. § 1107 ....................................................................................................................... 10, 25

11 U.S.C. § 1107(a) ................................................................................................................. 2, 3, 13

11 U.S.C. § 1108 ..................................................................................................................... 2, 3, 23

11 U.S.C. § 1501(b)(2) .................................................................................................................... 26

11 U.S.C. § 1505 ............................................................................................................................. 26

11 U.S.C. § 329(b) .......................................................................................................................... 10

11 U.S.C. § 341 ............................................................................................................................... 11

11 U.S.C. § 362 ....................................................................................................... 2, 12, 21, 23

11 U.S.C. § 362(a) ................................................................. 1, 11, 16, 21, 22, 24, 25, 29

11 U.S.C. § 362(a)(1) ..................................................................................................................... 22

11 U.S.C. § 362(a)(3) ............................................................................................................... 22, 23

11 U.S.C. § 362(a)(6) ..................................................................................................................... 22

11 U.S.C. § 362(b) ................................................................................................................... 16, 17

11 U.S.C. § 362(b)(4) ........................................ 2, 14, 15, 16, 17, 18, 22, 23, 24, 25, 29

11 U.S.C. § 362(b)(5) ..................................................................................................................... 16

11 U.S.C. § 362(h) .......................................................................................................................... 12

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

iii

11 U.S.C. § 363(c)(1)...............................................................................2, 10, 23

11 U.S.C. § 363(n)..............................................................................................10

11 U.S.C. § 364(b)(4)..........................................................................................19

11 U.S.C. § 510(c)........................................................................................10, 27

11 U.S.C. § 541..............................................................................................4, 24

11 U.S.C. § 541(a)..............................................................................................10

11 U.S.C. § 543.............................................................................................10, 20

11 U.S.C. § 544...................................................................................................27

11 U.S.C. § 547.........................................................................................11, 24, 27

11 U.S.C. § 548...........................................................................11, 22, 23, 24, 27

11 U.S.C. § 548(a)...............................................................................................27

11 U.S.C. § 548(e)...............................................................................................27

11 U.S.C. § 550...............................................................10, 11, 22, 23, 24, 26, 27

11 U.S.C. § 551...................................................................................................10

11 U.S.C. § 553...................................................................................................10

11 U.S.C. § 723...................................................................................................10

28 U.S.C. § 1334...................................................................................................2

28 U.S.C. § 1408...................................................................................................2

28 U.S.C. § 157.....................................................................................................2

28 U.S.C. § 959....................................................................................................14

28 U.S.C. § 959(b)...............................................................................................14

28 U.S.C. § 960....................................................................................................14

29 U.S.C. § 160(e)...............................................................................................16

## Other Authorities

1978 U.S.Code Cong. & Admin.News 5787, 5963, 6296-97)...........................12

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1978)......................................12

National Labor Relations Act 932 F.2d at 831..............................................16

## Rules

Local Rule 1007..................................................................................................11

Local Rule 2002(a).............................................................................................11

Local Rule 9014.2.................................................................................................3

## Treatises

3 COLLIER ON BANKRUPTCY ¶ 362.05[5][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014)..............................................................................................14, 15

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

iv

1

**Regulations**

Exchange Act of 1934 Rule 10b-5 .............................................................................. 7, 9

Exchange Act of 1934 Section 10(b) ........................................................................... 7, 9

Securities Act of 1933 17(a) ........................................................................................ 7

Securities Act of 1933 Section 5 ................................................................................ 7

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

v

TelexFree, LLC, a Nevada limited liability company ("**TelexFree Nevada**"), TelexFree, Inc., a Massachusetts corporation ("**TelexFree Massachusetts**"), and TelexFree Financial, Inc., a Florida corporation ("**TelexFree Florida**" and together with TelexFree Massachusetts and TelexFree Nevada, "**TelexFree**," the "**Debtors**" or the "**Company**"), debtors and debtors-in-possession in the above-captioned Chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this motion (the "**Motion**") requesting the Court enter an order determining that: (I) portions of the Temporary Restraining Order (defined below) as it relates to the Debtors, entered by the United States District Court for the District of Massachusetts (the "**District Court**") at the request of the U.S. Securities and Exchange Commission (the "**SEC**"), violated the automatic stay of Section[1] 362(a) of the Bankruptcy Code; (II) portions of the Temporary Restraining Order as it relates to the Debtors are void as a matter of law; and (III) the Debtors are entitled to use their assets in the ordinary course of their business.

The Motion is made and based on the memorandum of points and authorities provided herein, the *Declaration of Stuart A. MacMillan in Support of Motion for an Order Determining that: (I) Portions of the Temporary Restraining Order Entered at the Request of the Securities and Exchange Commission Violated the Automatic Stay of 11 U.S.C. § 362(a); (II) Portions of the Temporary Restraining Order are Void; and (III) the Debtors are Entitled to Use Their Assets in the Ordinary Course of Their Business* (the "**MacMillan Declaration**"), filed concurrently herewith, the *Omnibus Declaration of William H. Runge, in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [ECF No. 13] (the "**Omnibus Declaration**"), the pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice of which is hereby requested, and the argument of counsel or additional evidence entertained by the Court at the time of the hearing of this Motion or at any subsequent hearing on this Motion.

. . .

---

[1] All references to "**Chapter**" and "**Section**" herein shall be to the "**Bankruptcy Code**" appearing in Title 11 of the U.S. Code; all references to "**Bankruptcy Rule**" shall be to the Federal Rules of Bankruptcy Procedure; and all references to "**Local Rule**" shall be to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

# I.
## INTRODUCTION

After the Debtors' initiation of the Chapter 11 Cases, the SEC with full knowledge of the Chapter 11 Cases commenced an action in the District Court and sought and obtained on an ex parte basis the Temporary Restraining Order which has effectively enjoined the Debtors from operating their business in the ordinary course of business and honoring administrative claims, the effect of which (which as appears to have been the clear intent of the SEC) will be the certain and immediate failure of these Chapter 11 Cases.[2]  The SEC's actions in seeking and obtaining the Temporary Restraining Order as they relate to the Debtors is in part violative of Section 362(a) and does not fall within the exception of Section 362(b)(4) for the exercise of police and regulatory powers.

# II.
## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      The basis for the relief sought herein arises from Sections 105(a), 362, 363(c)(1), 1107(a) and 1108 of the Bankruptcy Code.[3]

3.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] That the SEC filed the Complaint after the Petition Date is significant.  The Bankruptcy Court and District Court have concurrent jurisdiction to determine the effect of the automatic stay on the SEC Action and TRO and, because the Bankruptcy Court's jurisdiction attached first in time, the Bankruptcy Court's jurisdiction is superior.  See S.E.C. v. Wolfson, 309 B.R. 612, 614 (D. Utah 2004).  See also United States Dep't of Housing & Urban Dev't v. Cost Control Marketing & Sales Mgm't, 64 F.3d 920, 927 n.11 (4th Cir. 1995); Brock v. Morysville Body Works, Inc., 829 F.2d 383 (3rd Cir. 1987), cert. denied, 517 U.S. 1187, 116 S.Ct. 1673, 134 L.Ed.2d 777 (1996); In re Dolen, 265 B.R. 471, 476 (Bankr. M.D. Fla. 2001) (noting that "[t]he district court has concurrent jurisdiction with the bankruptcy court to determine the extent to which the Section 362 automatic stay limits the actions of the Commission in its ability to pursue the pending district court action."); United States v. Delta Distributors Co., Inc., 1996 WL 460112 (S.D.W. Va. June 21, 1996) (finding that "because this Court's jurisdiction attached first in time, it is superior.").

[3] Courts have recognized multiple ways to handle stay violations.  There is not one procedurally correct way.  Courts have considered: (i) a motion for ruling that a state court's minute entry violated the automatic stay, see Johnston v. Parker (In re Johnston), 308 B.R. 469 (Bankr. D. Ariz. 2003); affirmed in part, vacated and remanded in part; Sternberg v. Johnston, 582 F.3d 1114 (9th Cir. 2009); see also Black v. Bonnie Springs Family Ltd. (In re Black), 487 B.R. 202 (B.A.P. 9th Cir. 2013); (ii) motions for sanctions or contempt for violating the stay, see Schwartz-Tallard v. America's Servicing Co. (In re Schwartz-Tallard), 473 B.R. 340 (B.A.P. 9th Cir. 2012); see also Black; and (iii) adversary complaints for stay violations, see Pruitt v. Chase Home Fin., LLC (In re Pruitt), 2011 Bankr. LEXIS 5661 (Bankr. E.D. Cal. July 1, 2011); see also In re Johnston.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

2

4.    Pursuant to Local Rule 9014.2, the Debtors consent to entry of final order(s) or judgment(s) by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### III.
### BACKGROUND FACTS

**A.    The Chapter 11 Cases.**

5.    On April 13, 2014 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief (the "**Petitions**") under Chapter 11 with the United States Bankruptcy Court for the District of Nevada (the "**Bankruptcy Court**"), thereby commencing the Chapter 11 Cases.  See ECF No. 1; Case No. 14-12525-abl, ECF No. 1; Case No. 14-12526-abl, ECF No. 1.

6.    The Debtors are authorized to operate their business as debtors and debtors-in-possession pursuant to Sections 1107(a) and 1108.  See generally Dockets.

7.    The Company hired Alvarez & Marsal ("**A&M**"), a global leader in business restructuring and reorganization, as Chief Restructuring Advisor (the "**CRA**") on April 10, 2014, to safeguard existing cash, guide the Debtors through a Chapter 11 reorganization, and develop a profitable business plan based on a revised compensation arrangement.  William H. Runge, III, a Managing Director with A&M and head of its North American restructuring practice for the Southern United States, is the CRA.  The intention of the Company is to have Mr. Runge serve as Chief Restructuring Officer upon the Company obtaining appropriate post-petition insurance.  See Omnibus Decl. ¶¶ 1-7, 38.  See also MacMillan Decl. ¶ 6.

8.    Mr. Runge specializes in business diagnostics, business plan development and financial strategies for corporate turnarounds and restructuring.  His primary areas of concentration are formulating and evaluating operational and organizational structures, and developing and implementing new strategies in the heavy manufacturing, distribution, telecommunications, and technology industries.  See Omnibus Decl. ¶ 3.

9.    As the CRA, Mr. Runge submitted the Omnibus Declaration in the Chapter 11 Cases on the Petition Date.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

3

10.     The Debtors filed the Chapter 11 Cases to obtain the breathing room necessary to address their operational and regulatory issues, revise their operations, recover assets of their bankruptcy estates (as defined in Section 541), and quantify and address the claims (as defined in Section 101(5)) against them. The Debtors believe that a restructuring of their debt, recovery of assets of their estates, adoption of a post-petition revised compensation plan, unveiling of new products (including the TelexFree app), and return to growing their Customer (as defined below) base will allow the Debtors to realize their full potential and generate significant value for their creditors (as defined in Section 101(10)). See id. ¶ 13.

11.     On April 13, 2014, the Clerk of the Bankruptcy Court filed the *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines* in each of the Debtors' respective Chapter 11 Cases (collectively, the "**Bankruptcy Notices**"), thus providing parties receiving the Bankruptcy Notices that each of the Debtors filed a Chapter 11 bankruptcy and that the automatic stay of Section 362(a) of the Bankruptcy Code went into effect. See Case 14-12524, ECF No. 2; Case 14-12525-ABL, ECF No. 4; Case 14-12526-ABL, ECF No. 4. The Debtors provided the SEC timely copies of the Bankruptcy Notices.

**B.      The Debtors' Business Operations.**

12.     The Debtors are a telecommunications business that uses multi-level marketing to assist in the distribution of voice over internet protocol ("**VoIP**") telephone services. TelexFree Nevada's and TelexFree Massachusetts' retail VoIP product, 99TelexFree, allows for unlimited international calling to approximately seventy countries for a flat monthly rate of $49.90. Customers of the Debtors' VoIP product ("**Customers**") used approximately 11 million minutes of the 99TelexFree VoIP service in February 2014. Since 99TelexFree was introduced in 2012, Customer usage increased on a monthly basis until March 2014. See Omnibus Decl. ¶ 9.

13.     TelexFree Nevada and TelexFree Massachusetts were operated as a multi-level marketing company, and TelexFre Nevada currently has over 700,000 associates or promoters (the "**Promoters**") worldwide. Prior to the filing of the Chapter 11 Cases, TelexFree Nevada compensated Promoters for the sales of the VoIP product, the placing of advertisements and the recruitment of other Promoters down line. On March 9, 2014, due to questions raised with

4

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

respect to the compensation plan, TelexFree Nevada discontinued the original compensation plan (the "**Original Comp Plan**") and replaced the Original Comp Plan with a revised compensation plan (the "**Revised Comp Plan**" and together with the Original Comp Plan, the "**Pre-Petition Comp Plans**").  At the time of the roll-out of the Revised Comp Plan, TelexFree Nevada decided to honor certain discretionary payments to Promoters under the Original Comp Plan.  These discretionary payments quickly resulted in a substantial drain on the Debtors' liquidity.  As a result, TelexFree discontinued the Pre-Petition Comp Plans and ceased making discretionary payments under the Original Comp Plan prior to the Petition Date.  See id. ¶ 11.  **The Debtors are neither operating nor honoring the Pre-Petition Comp Plans.**

14.    In addition to the 99TelexFree VoIP service, TelexFree Nevada and TelexFree Massachusetts released a mobile phone "app" for I-Phones and Google phones in March 2014.  Telex Mobile, a joint venture which is partially owned by TelexFree Nevada's and TelexFree Massachusetts' equity owners, is developing a mobile phone service called TelexMobile, which the Debtors expect will be released within the next several months.  The Debtors believe the sales of the 99TelexFree product, the TelexFree "app," and other new products will ultimately prove successful and profitable.  See id. ¶¶ 10, 12.

**C.    The Events that Precipitated the Chapter 11 Cases.**

15.    These Chapter 11 Cases were filed for several reasons.  First, TelexFree Nevada and TelexFree Massachusetts experienced exponential growth in revenue between 2012 and 2013 (from *de minimus* amounts to over $1 billion), which put tremendous pressure on the Debtors' financial, operational and management systems.  Second, although TelexFree Nevada revised the Original Comp Plan in order to address certain questions that were raised regarding such plan, the Debtors believe that the Pre-Petition Comp Plans need to be further revised before implemented.  Finally, the trailing liabilities arising from the Original Comp Plan are difficult to quantify and have resulted in substantial asserted liabilities against the Debtors, a number of which may not be valid.  See id. ¶ 12.

16.    In February 2014, the Debtors hired Stuart MacMillan to act as their Interim Chief Executive Officer.  MacMillan has over 25 years of management experience, the last 15 of which

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

5

have been in direct selling and multi-level marketing companies. Among other management positions, MacMillan previously served as the first International President of Excel Communications, a multi-level marketing telecommunications company, and later as the President of Excel Communications in Canada. MacMillan also acted as the first Managing Director of Arbonne Canada. See id. ¶ 32.

17.     Mr. MacMillan is currently acting as the Debtors' Interim CEO. Mr. Merrill, Mr. Wanzeler, and Joseph Craft, CPA (who previously served as the Debtors' accountant, prepared their taxes and financial statements, and was the Interim Chief Financial Officer for a brief period), resigned or were terminated from any involvement with the Company effective April 17, 2014, and no longer have any access to or input in the Debtors' operations or these Chapter 11 Cases.[4] See id. ¶¶ 32. See Also MacMillan Decl. ¶ 5.

18.     The Debtors are implementing a new cash management system to safeguard funds for the benefit of all constituents. After the Ympactus investigation, the Debtors had difficulty maintaining depository relationships with federally regulated banking institutions. To address this issue and to provide assurances to creditors, regulators, and the Bankruptcy Court that the Debtors' funds have been protected, the Debtors have adopted board resolutions that have transferred exclusive signing authority for all banking accounts to Mr. MacMillan, as Interim CEO. In addition, the Debtors, led by the CRA, are negotiating to have the Debtors' funds deposited in an escrow account with a regulated financial institution. While the Debtors will need access to escrowed funds to operate, any withdrawal from such account would require Bankruptcy Court authority. See Omnibus Decl. ¶ 40.

19.     The Debtors believe that a restructuring of their debt, adoption of a post-petition revised compensation plan, unveiling of new products (including the TelexFree app), and return to growing their Customer base will allow the Debtors to realize their full potential and generate significant value for their constituents. See id. ¶ 13.

---

[4] Mr. Merril and Mr. Craft resigned their positions. Mr. Wanzeler was terminated. Although Mr. Wanzeler was terminated as an officer for the Company, specific by-laws prevented his termination as a board member of the Company. However, since he is a conflicted director, he cannot take any actions nor have any authority over the Debtors' affairs. As such, MacMillan is the only independent director.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

20.    Through the Chapter 11 Cases, the Debtors under the direction of Mr. MacMillan (working with A&M and certain outside consultants) intend to: (i)  quickly develop a new compensation plan that will replace the Pre-Petition Comp Plans; (ii)  reject the discontinued Pre-Petition Comp Plans and quantify the legitimate claims under those plans; (iii) investigate all possible avoidance actions as provided by the Code (as more fully discussed below) and prosecute such actions against all initial transferees and subsequent transferees as provided by the Code; (iv) provide for a distribution scheme pursuant to a plan of reorganization to satisfy all allowed claims; (v)  developed, if feasible,  a new compensation program in compliance with all applicable laws and regulations; (vi) explore alternatives for reorganization of the Debtors or, alternatively, the sale of assets of the Debtors to maximize the return to holders of allowed claims; and (vii) cooperate with the SEC and the Massachusetts Securities Division in their ongoing investigations related to the Debtors and prosecutions against third parties, including the Debtors' former employees and equity holders of TelexFree Nevada and TelexFree Massachusetts.  See id. ¶ 39.  See MacMillan Decl. ¶ 7.

21.    The Debtors intend to continue to provide telecommunications services to new and existing customers during the pendency of the Chapter 11 Cases.  See Omnibus Decl. ¶ 39.

**D.    The SEC Action.**

22.    On April 15, 2014 (the "**Filing Date**"), the SEC filed a *Complaint* (the "**Complaint**") before the District Court against the Debtors.  In particular, the Complaint named TelexFree Nevada and TelexFree Massachusetts as defendants and, as a relief defendant, TelexFree Florida.  *A true and correct copy of the Complaint is attached to the MacMillan Declaration at Exhibit "1."*  See MacMillan Decl. ¶ 8.

23.    In addition to the Debtors, the Complaint lists as defendants several individuals as well as TelexElectric, LLLP ("**TelexElectric**") and Telex Mobil Holdings, Inc. ("**Telex Mobile**") as relief defendants.  See Complaint.

24.    The Complaint alleges the defendants (including the Debtors) have engaged and are still engaged in civil violations of the following:  Section 10(b) of the Exchange Act of 1934 (the "**Exchange Act**") and Rule 10b-5 thereunder, Sections 5 and 17(a) of the Securities Act of

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

7

1  1933 (the "**Securities Act**").  As set forth in Section 8 of the Complaint, the SEC is seeking a

2  permanent injunction against the defendants from further violation the Exchange Act and

3  Securities Act and disgorgement of wrongful gains as a result of such violations as well as the

4  imposition of civil penalties pursuant to the Exchange Act and Securities Act.  In the prayer to

5  the Complaint, with respect to disgorgement, the SEC requests that "ill-gotten gains and losses

6  avoided" for the distribution of such monies in accordance with a plan of distribution as to be

7  ordered by the District Court.  See id.

8      25.    On the Filing Date, the SEC also filed its *Plaintiff's Emergency Ex Parte Motion*

9  *for a Temporary Restraining Order, Order Freezing Assets and Order for Other Equitable Relief*

10  (the "**Ex Parte Motion**").    Attached to the Ex Parte Motion was a form of *[proposed]*

11  *Temporary Restraining Order* (the "**Proposed Order**").  *Attached to the MacMillan Declaration*

12  *as Exhibits "2" and "3" are true and correct copies of the Ex Parte Motion and Proposed*

13  *Order, respectively.*  See MacMillan Decl. ¶ 9.

14      26.    In support of the Ex Parte Motion, the SEC filed its *Plaintiff's Emergency Ex*

15  *Parte Memorandum in Support of its Motion for a Temporary Restraining Order, Order*

16  *Freezing Assets and Order for Other Equitable Relief* (the "**Memorandum**"), in which, at page

17  20, the SEC acknowledges the prior filing of the Chapter 11 Cases.  *Attached to the MacMillan*

18  *Declaration as Exhibit "4" is a true and correct copy of the Memorandum.*  See id. ¶ 10.

19      27.    On April 16, 2014, in reliance upon the Ex Parte Motion, the Memorandum,

20  various declarations filed in support of the Ex Parte Motion and representations of counsel for

21  the SEC, the District Court entered a *Temporary Restraining Order* (the "**TRO**"), identical in

22  content to the Proposed Order but for the entry of April 24, 2014, at 2 p.m. as the expiration of

23  the TRO unless extended by the District Court for good cause.  *Attached to the MacMillan*

24  *Declaration as Exhibit "5" is a true and correct copy of the TRO.*  See id. ¶ 11.

25      28.    In general, the TRO provides the following:

26      (a) in Section I restrains and enjoins the defendants, including the Debtors, from violating

27  Section 17(a) the Securities Act;

28

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

(b) in Section II restrains and enjoins the defendants, including the Debtors, from violating Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

(c) in Section III restrains and enjoins the defendants, including the Debtors, from violating Section 5 of the Securities Act;

(d) in Section IV enjoins and restrains the defendants, including the Debtors, from, in general, using, transferring or dissipating in any manner their assets;

(e) in Section V freezes any and all assets directly or indirectly under the control of the defendants, including the Debtors, and directing any bank, brokerage or other financial institution which has assets of any of the defendants to freeze and deny defendants, including the Debtors, access to such funds as well as opening any new bank accounts;

(f) in Section VI requires the defendants, including the Debtors, to within 5 business days of service of the TRO submit a full accounting of all alleged transfers or payments of funds related to the alleged violations in the Complaint as well as all assets presently held by any of the defendants;

(g) in Section VII requires the defendants, including the Debtors, to remit to the registry of the District Court all funds or assets located outside the United States;

(h) in Section VIII prohibits the defendants, including the Debtors, from soliciting, accepting or depositing any moneys received from investors or Promoters;

(i) in Section IX restrains the defendants, including the Debtors, from destroying, concealing any and all documents and business records; and

(j) in Section X authorizes the SEC to begin civil discovery in accordance with the Federal Rules of Civil Procedure.

See TRO.

29.    Since the granting of the TRO, the Debtors have been unable to operate their VoIP service in the ordinary course or take other steps to maximize the value of the estates such as purchasing insurance, paying taxes and employees or developing and implementing a new business plan. The impact of the TRO is to effectively shut down the Debtors' underlying

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

9

1  business and erode value that may otherwise provide recoveries for all constituents. <u>See</u>

2  MacMillan Decl. ¶ 12.

**IV.**
**LEGAL ARGUMENT**

3

4  **A.    The Debtors are Authorized to Operate Their Business in the Ordinary Course.**

5       Section 1108 permits a trustee to operate a debtor's business during the pendency of the

6  bankruptcy unless the bankruptcy court orders otherwise. <u>See</u> <u>In re Straightline Investments,</u>

7  <u>Inc.</u>, 525 F.3d 870, 879 (9th Cir. 2008) (citing 11 U.S.C. § 1108). Additionally, Section 1107

8  grants a debtor-in-possession under Chapter 11 all of the same rights and powers of a trustee.

9  <u>See</u> <u>id.</u> (citing 11 U.S.C. § 1107). Furthermore, pursuant to Section 363(c)(1), a debtor in

10 possession is authorized to enter into any transaction without bankruptcy court approval so long

11 as the transaction is in the ordinary course of the debtor's business. <u>See</u> <u>id.</u> (citing 11 U.S.C. §

12 363(c)(1)).

13 **B.    The Commencement of the Chapter 11 Cases Created Estates.**

14      Pursuant to Section 541(a), the commencement of the Chapter 11 Cases created estates

15 comprised of all of the Debtors' assets, wherever located and by whomever held, including, but

16 not limited to, all legal or equitable interests of the Debtors in property as of the commencement

17 of the Chapter 11 Cases, any interest in property that a trustee recovers under Sections 329(b),

18 363(n), 543, 550, 553, or 723, any interest in property preserved for the benefit of or ordered

19 transferred to the estates under Sections 510(c) or 551, the proceeds, product, offspring, rents, or

20 profits of or from property of the estates, and any interest in property that the estates acquire after

21 the commencement of the Chapter 11 Cases. <u>See</u> 11 U.S.C. § 541(a). "The Legislative history

22 of the Bankruptcy Code reveals that the concept of property of the estate is to be interpreted

23 broadly." <u>In re Chappel</u>, 189 B.R. 489, 493 (B.A.P. 9th Cir. 1995).

24      "The district court in which the bankruptcy case is commenced obtains exclusive in rem

25 jurisdiction over all of the property in the estate." <u>In re Crown Vantage, Inc.</u>, 421 F.3d 963, 971

26 (9th Cir. 2005) (quoting <u>Hong Kong and Shanghai Banking Corp., Ltd. v. Simon (In re Simon)</u>,

27 153 F.3d 991, 996 (9th Cir. 1998)). "Thus, the jurisdiction of the bankruptcy court exceeds that

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

10

of any other court-appointed receiver. The requirement of uniform application of bankruptcy law dictates that all legal proceedings that affect the administration of the bankruptcy estate be brought either in bankruptcy court or with leave of the bankruptcy court." Id.

As such, given the breadth of the concept of assets of an estate, the Debtors were empowered as of the Petition Date to (a) investigate and prosecute any and all avoidance actions, including preferences pursuant to Section 547 and fraudulent transfers to both initial transferees and subsequent transferees pursuant to Sections 548 and 550, and (b) to recover all moneys due the Debtors whether located in or outside the United States.

**C.    The Debtors' Additional Obligations Upon Commencement of the Chapter 11 Cases.**

In accordance with Rule 1007, upon the initiation of the Chapter 11 Cases, each of the Debtors filed a corporate ownership statement, list of creditors and equity security holders. Within the time prescribed in Rule 1007, among other requirements, each of the Debtors is required to file schedules of assets and liabilities, a schedule of executory contacts and unexpired leases and a statement of financial affairs.  Pursuant to Rule 2002(a), the Debtors are required to provide to creditors and other prescribed persons notice of the commencement of the Chapter 11 Cases and the meeting of creditors required under Section 341.

**D.    The Commencement of the Chapter 11 Cases Triggered the Automatic Stay of 11 U.S.C. § 362(a).**

The commencement of the Chapter 11 Cases also operates as a stay of all collection activities or suits brought against the Debtors.  Section 362(a) provides that:

> (a) Except as provided in subsection (b) of this Section, a petition filed under section 301, 302, or 303 of this title … operates as a stay, applicable to all entities, of--
>
> (1) the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

11

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362. According to the Ninth Circuit in In re Schwartz:

[t]he automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his [or her] creditors. *It stops all collection efforts, all harassment, and all foreclosure actions*. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6296-97) (italics in original).

Given its importance, the Ninth Circuit has recognized that the Code does not burden the debtor with a duty to take additional steps to secure the benefit of the automatic stay, see id. at 572, that parties have an affirmative duty to discontinue actions taken in violation of the automatic stay, see Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210 (9th Cir. 2002), and that actions, including judicial proceedings, that violate the automatic stay are void, not merely voidable. See In re Gruntz, 202 F.3d 1074, 1082 (9th Cir. 2000); Schwartz, 954 F.2d at 572. Furthermore, a violation of the automatic stay is punishable as contempt of court. See Goodman v. Johnston Environmental Corp., 991 F.2d 613, 620 (9th Cir. 1993) ("For other debtors [who are not "individuals"], contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay."). See also Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1189-90 (9th Cir. 2003); In re Skinner, 917 F. 2d 444, 449 (10th Cir. 1990) (stay violation to be punished pursuant to Section 362(h) or as a contempt violation under Section 105).

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

12

**E.    The Debtors as Debtors-in-Possession are Fiduciaries for Their Estates.**

By virtue of Section 1107(a), a Chapter 11 debtor in possession stands in the shoes of a trustee and is a fiduciary for the estate and its creditors. See Thompson v. Margen (In re McConville), 110 F.3d 47, 50 (9th Cir. 1997) (stating that Chapter 11 debtors in possession "were fiduciaries of their own estate owing a duty of care and loyalty to the estate's creditors"), cert. denied, 522 U.S. 966, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997); Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 614 (9th Cir. 1988) ("As debtor in possession he is the trustee of his own estate and therefore stands in a fiduciary relationship to his creditors" (footnote omitted)); Devers v. Bank of Sheridan, Montana (In re Devers), 759 F.2d 751, 754 (9th Cir. 1985) ("A debtor-in-possession has the duty to protect and conserve property in his possession for the benefit of creditors").

Moreover, when the debtor is a corporation, the debtor in possession's fiduciary obligations to the corporation, its creditors and shareholders, fall upon the officers and directors of the corporation. See Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (stating that "the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession"); Wolf v. Weinstein, 372 U.S. 633, 649, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963) (observing that "so long as the Debtor remains in possession, it is clear that the corporation bears essentially the same fiduciary obligation to the creditors as does the trustee for the Debtor out of possession"); Holta v. Zerbetz (In re Anchorage Nautical Tours, Inc.), 145 B.R. 637, 643 (BAP 9th Cir. 1992) ("When the debtor is a corporation, corporate officers and directors are considered to be fiduciaries both to the corporate debtor in possession and to the creditors."). As an additional safeguard, debtor's counsel is charged with the duty to advise the debtor in possession of its responsibilities under the Code and to assist the debtor in possession and its principals in discharging those responsibilities, including their fiduciary duties to act in the best interest of creditors and the estate. See In re Shalan Enterprises, LLC, 2012 WL 1345328 (Bankr. C.D. Cal. Apr.17, 2012).

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

13

**F.**     **The Debtors as Debtors-in Possession are Required to Comply With all Applicable Laws and Regulations.**

28 U.S.C. § 959 requires the trustee or debtor in possession to comply with applicable law in operating a business under the protection of the Code. See 28 U.S.C. § 959. See also 3 COLLIER ON BANKRUPTCY ¶ 362.05[5][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014) ("28 U.S.C. § 959 requires that a trustee or debtor in possession operate property in its possession according to the requirements of the valid laws of the state in which the property is located."); In re Sluggo's Chicago Style, Inc., 94 B.R. 625, 630 (B.A.P. 9th Cir. 1988) aff'd, 912 F.2d 1073 (9th Cir. 1990) ("28 U.S.C. §§ 959(b) and 960 impose on fiduciaries, such as the debtor in possession, a specific and affirmative obligation to comply with state law and pay taxes while operating a business." ); In re Lazar, 207 B.R. 668, 682 (Bankr. C.D. Cal. 1997) ("This statute requires a trustee or debtor in possession to comply with applicable law in operating a business under the protection of the Code. 28 U.S.C. § 959(b)").  As such, according to the court in In re JLM, Inc., 210 B.R. 19 (B.A.P. 2d Cir. 1997):

> [t]he debtor's attorney, while not a trustee, nevertheless is charged with the duty of counseling the debtor in possession to comply with its duties and obligations under the law. When a debtor in possession is in breach of its fiduciary obligations, counsel must advise the client "to follow a lawful course." "The attorney has a duty to remind the debtor in possession, and its principals, of its duties under the Code, and to assist the debtor in fulfilling those duties."

210 B.R. at 26.

**G.**     **The Police and Regulatory Exception of Section 362(b)(4).**

The SEC Action was commenced and the Ex Parte Motion for TRO was filed after the Petition Date with full knowledge on the part of the SEC as to the prior initiation of the Chapter 11 Cases.  As a result, both the SEC Action and the Ex Parte Motion were subject to the automatic stay as the SEC Action relates to the Debtors unless an exception to the automatic stay applies.  As explained below, while the mere filing of the Complaint as it relates to the Debtors may fall within the regulatory and police power exception set forth in Section 362(b)(4), certain Sections of the TRO related to the Debtors violate the provisions of Section 362(a) and do not

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

1 | fall within the exception set forth in Section 362(b)(4).

2 |     Section 362(b)(4) provides certain exceptions to the automatic stay for the enforcement

3 | of police and regulatory powers:

4 |     (b) The filing of a petition under section 301, 302, or 303 of this title …
does not operate as a stay—

5 |

6 |     (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section,
of the commencement or continuation of an action or proceeding by a

7 | governmental unit … to enforce such governmental unit's or
organization's police and regulatory power, including the enforcement of a

8 | judgment ***other than a money judgment***, obtained in an action or
proceeding by the governmental unit to enforce such governmental unit's

9 | or organization's police or regulatory power.

10 | 11 U.S.C. § 362(b)(4) (emphasis added).  The Bankruptcy Appellate Panel for the Ninth Circuit

11 | (the "**BAP**") has acknowledged that the Code provides certain exceptions to the automatic stay,

12 | but those exceptions are to be interpreted "narrowly."  See In re First Alliance Mortgage Co.,

13 | 263 B.R. 99, 196 (B.A.P. 9th Cir. 2001).

14 |     To determine whether an action is excepted from the automatic stay of Section 362(a) as

15 | a proceeding by a governmental unit to enforce such governmental unit's police or regulatory

16 | power, or whether the action is simply a collection action, the Ninth Circuit has adopted two (2)

17 | tests:

18 |     (1) the "pecuniary purpose test" - is the governmental unit pursuing a
matter of public safety and welfare rather than a governmental pecuniary

19 | interest?; and

20 |     (2) the "public policy test" - is the government action designed to

21 | effectuate public policy rather than to adjudicate private rights?

22 | See Berg v. Good Samaritan Hosp., Inc. (*In re* Berg), 230 F.3d 1165 (9th Cir. 2000).  If the

23 | answer to either test is yes, then the action is excepted from the automatic stay ***unless the action***

24 | ***is the enforcement of a money judgment***.  See In re Chapman, 264 B.R. 565, 569 (B.A.P. 9th

25 | Cir. 2001).

26 |     More specifically, while a governmental unit may pursue actions against the debtor or the

27 | estate, "it may not enforce a money judgment or seize or seek control over property of the estate

28 |

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

1  without first obtaining relief from the stay." See 3 COLLIER ON BANKRUPTCY ¶ 362.05[5][a].

2  See also Ohio v. Kovacs, 469 U.S. 274, 283 n.11, 105 S. Ct. 705, 710 n.11 (1985) (in holding

3  that an obligation of a chapter 7 debtor to clean up a hazardous waste disposal site was a debt

4  dischargeable under the Code, the Court suggested that enforcement of such a judgment by

5  seeking a monetary recovery would not fall within the subsection 362(b)(4) or (5) exceptions);

6  Commodity Futures Trading Comm'n v. Co Petro Mfg., 700 F.2d 1279 (9th Cir. 1983) (Section

7  362(b)'s exception to Section 362(a) does not extend to permit enforcement of a money

8  judgment); Chapman, 264 B.R. at 571 ("a governmental unit can obtain a money judgment or a

9  judgment for possession, but it cannot enforce a money judgment without obtaining relief from

10 the automatic stay in the bankruptcy court"); SEC v. Brennan, 230 F.3d 65 (2d Cir. 2000)

11 (repatriation order dealing with offshore assets was part of SEC's effort to enforce a money

12 judgment and was thus entered in violation of automatic stay); NLRB v. 15th Ave. Iron Works,

13 Inc., 964 F.2d 1336 (2d Cir. 1992). "Allowing '[e]nforcement of a monetary judgment would

14 give the governmental unit an unfair advantage over other creditors, and would effectively

15 subvert the scheme of priorities set forth in section 507.'" Co Petro, 700 F.2d at 1283.

16 In NLRB v. Continental Hagen Corp., 932 F.2d 828 (9th Cir. 1991), the NLRB issued an

17 order against Chapter 11 debtor Continental, finding that Continental engaged in unfair labor

18 practices in closing a facility without bargaining with the union in violation of the National

19 Labor Relations Act. See 932 F.2d at 831. The order provided that the debtor among other

20 things, must (1) cease and desist from its unfair labor practices and other violations; and (2) pay

21 backpay to its employees. See id. Continental argued that the NLRB lacked jurisdiction to enter

22 the order and that judicial enforcement of the NLRB order providing for backpay was barred

23 because it violated 11 U.S.C. § 362(a). See id. The NLRB countered that the order could be

24 enforced because: (1) the NLRB falls within the governmental police or regulatory unit

25 exception to the automatic stay set forth in 11 U.S.C. §§ 362(b)(4) and (b)(5); and (2) it is not

26 arguing for actual "enforcement" of the backpay provision, but instead for an "entry" of

27 judgment pursuant to the enforcement provision of 29 U.S.C. § 160(e). See id.

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

The Ninth Circuit found that the order was exempt from the automatic stay and was enforceable.  See id.  The Continental court noted that Circuit and bankruptcy courts had drawn a distinction between the "entry" and "enforcement" of a money judgment under Section 362(b)'s police and regulatory exception to the stay:

> [a]s the legislative history explicitly notes, the mere *entry* of a money judgment by a governmental unit is not affected by the automatic stay, provided of course that such proceedings are related to that government's police or regulatory powers.
>
> Quite separate from the entry of a money judgment, however, is a proceeding to *enforce* that money judgment. ***The paradigm for such a proceeding is when, having obtained a judgment for a sum certain, a plaintiff attempts to seize property of the defendant in order to satisfy that judgment. It is this seizure of a defendant-debtor's property, to satisfy the judgment obtained by a plaintiff-creditor, which is proscribed by subsection 362(b)(5).***

See id. (quoting Penn Terra Ltd. v. Dept. of Environ. Resources, 733 F.2d 267, 275 (3d Cir. 1984) (italics in original; bold italics added).  See also NLRB v. P*I*E Nationwide, Inc., 923 F.2d 506, 512 (7th Cir. 1991) (holding that NLRB did not run afoul of Section 362(b) by attempting to reduce a claim to judgment where the NLRB was merely seeking entry of judgment and is not trying to seize debtor property to satisfy a money judgment, and also acknowledge that it could not enforce any judgment through the normal legal processes and recognizes that its only remedy for collection is through the bankruptcy court).  Consequently, the Continental court found that Section 362(b) permitted entry of the NLRB backpay provision, but that "entering judgment in favor of the NLRB with respect to the backpay provision, does not negate the fact that actual enforcement of the backpay provision must take place through the Bankruptcy Court."  See id. at 835.

Furthermore, in In re First Alliance Mortgage Co., 263 B.R. 99 (B.A.P. 9th Cir. 2001), the BAP held that Section 362(b)(4) excepted prosecution of a consumer fraud claim up to judgment for civil penalties and attorney fees, and that restitution claims were exempt from the automatic stay so long as the governmental unit sought only the entry, not the enforcement, of the money judgment.   See 263 B.R. at 103.   Prior to First Alliance's bankruptcy, the

17

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

1    Commonwealth of Massachusetts obtained a preliminary injunction against First Alliance, which

2    prohibited it from engaging in the loan origination business.  See id.  The preliminary injunction

3    ensued from the Commonwealth's lawsuit for injunctive relief, civil penalties, attorneys' fees

4    and costs, and restitution on behalf of 299 Massachusetts consumers who had borrowed money

5    from First Alliance.   See id.   The sole issue on appeal was whether the Commonwealth's

6    consumer protection action for civil penalties, attorneys' fees, and restitution for borrowers was

7    exempt from the automatic stay under Section 362(b)(4).  See id. at 106.

8        The BAP wrote that Section 362(b)(4) "permits a governmental unit to 'commence or

9    continue any police or regulatory action, including one seeking a money judgment, ***but it may***

10   ***enforce only those judgments and orders that do not require payment or authorize the***

11   ***government to exercise control over property of the estate.'***"  See id. at 107 (emphasis added).

12   According to the First Alliance court: "[n]ot every police or regulatory action is automatically

13   exempt, however. Enforcement of laws that affect health, welfare, morals, and safety will not be

14   stayed, ***but regulatory laws that directly conflict with the control of the res or property by the***

15   ***bankruptcy court will be stayed.***"  Id. (citing In re Universal Life Church, Inc., 128 F.3d 1294,

16   1297 (9th Cir. 1997)) (emphasis added).  The BAP concluded that the penalties imposed for

17   consumer fraud meet both the pecuniary purpose test and the public policy test and, as such, the

18   BAP held that Section 362(b)(4) exempts the Commonwealth's prosecution to judgment of its

19   claims for civil penalties and attorneys' fees from the automatic stay.  See 263 B.R. at 109.

20       As to the Commonwealth's claims for restitution, the Commonwealth contended that the

21   restitution claims should be excepted from the stay because: (1) they were not "solely pecuniary"

22   as they furthered the state's consumer protection policies; (2) the Commonwealth would not seek

23   to enforce the judgment outside of the bankruptcy case; (3) the Commonwealth was the plaintiff;

24   not private third parties; and (4) it was merely continuing with the claims liquidation process in

25   state court which would promote public policy.  See id.  First Alliance argued that the restitution

26   action was solely pecuniary and for the benefit of private parties.  See id.

27       In applying the pecuniary purpose test, the BAP wrote that "[t]raditionally, courts have

28   looked at what effect the action will have on the bankruptcy estate, and the supremacy of federal

18

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

laws." <u>See</u> <u>id.</u> at 109-110.  However, the BAP wrote that it found "a similarity between the cases

which exempted actions for back pay from the stay, and the action for restitution to citizens of

Massachusetts for the debtor's violation of the consumer protection laws, so long as the

Commonwealth seeks only the entry, and not the enforcement, of the money judgment." <u>See</u> <u>id.</u>

at 111.  Consequently, the BAP found that:

> [t]he restitution action here fits the narrow exception of § 362(b)(4) for
> fixing damages for violations of the consumer laws. Thus, the action is not
> primarily a vehicle for conducting litigation on behalf of private parties.
> However, collection and enforcement of the restitution claims must
> proceed according to normal bankruptcy procedures, and are stayed.

<u>See</u> <u>id.</u> at 114.

A close reading of <u>Co Petro</u> demonstrates that provisions of the TRO as they related to

the Debtors violate the automatic stay and are not excepted under Section 364(b)(4).  In <u>Co</u>

<u>Petro</u>, the Commodity Futures Trading Commission (the "**CFTC**") sued Co Petro and its various

employees and sales agents charging violations of the Commodity Exchange Act.  <u>See</u> 700 F.2d

at 1280.  The CFTC sought to enjoin the defendants from selling gasoline through the use of

contracts alleged to be futures contracts and also sought various forms of ancillary relief,

including the appointment of a receiver for the assets of Co Petro.  <u>See</u> <u>id.</u>  The district court

permanently enjoined the defendants from dealing in commodity futures contracts and also

granted various forms of ancillary relief, including the appointing a receiver, enjoining the

defendants from utilizing, diverting, transferring or dealing in any manner with the assets of Co

Petro, and ordering that the defendants disgorge all payments received by them from unlawful

activities.  <u>See</u> <u>id.</u>

After the preliminary injunction order was entered, Co Petro's counsel received a

$60,000 check from Co Petro.  <u>See</u> <u>id.</u> at 1280-81.  Shortly thereafter, Co Petro filed a Chapter

11 petition, and the receiver was appointed as trustee of the Co Petro's bankruptcy estate.  <u>See</u> <u>id.</u>

at 1281.  Counsel for the receiver/trustee requested that the law firm return the $60,000 check,

but the law firm refused.  <u>See</u> <u>id.</u>  In response, the receiver filed an application with the district

court seeking return of the $60,000, which application the district court granted.  <u>See</u> <u>id.</u>

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

On appeal to the Ninth Circuit, the law firm argued that the district court did not have jurisdiction to enter the order and that district court's order violated the automatic stay.  See id. at 1281-84.  The Co Petro court began by writing:

> [a]lthough section 1471(e) provides that the bankruptcy court shall have exclusive jurisdiction of all property, wherever located, of the debtor, the exceptions to the automatic stay set forth in section 362 and the provisions of section 1471(b) both recognize that under certain circumstances courts other than the bankruptcy court have jurisdiction to hear related proceedings involving the debtor.

See id. at 1282 (citing SEC v. First Financial Group of Texas, 645 F.2d 429, 439 (5th Cir.1981) (holding that section 1471(e) does not deprive district court of jurisdiction to appoint a temporary receiver in an enforcement action brought by the SEC)).  While the Ninth Circuit acknowledged that Section 1471(e) was amended to make explicit that all property of the debtor, wherever located, is in *custodial egis* of the bankruptcy court, the Co Petro court found that "[a]llowing the district court to enforce its preliminary injunction by directing the return of the $60,000 to the receiver would in no way frustrate the jurisdiction of the bankruptcy court."  See id. at 1283.  In essence, as the receiver was the trustee, ordering the property returned to the receiver preserved it for Co Petro's estate.  See id.

As to the implications of Sections 362(a) and 362(b), the Co Petro court found that the district court's order enforcing the injunction was not the enforcement of a money judgment, rather is was the enforcement of an injunction, which did not result in giving the CFTC or the defrauded investors preference over other creditors, because "the receiver must turn over all assets of Co Petro, including the $60,000, to the bankruptcy trustee for distribution with the rest of the estate."  See id. at 1284 (citing 11 U.S.C. § 543).  The Co Petro court thereafter distinguished the law firm's citation to State of Mo. v. U.S. Bankr. Court for E. D. of Arkansas, 647 F.2d 768 (8th Cir. 1981), a decision where the Eighth Circuit held that "'the term 'police or regulatory power' refers to the enforcement of state laws affecting health, welfare, morals and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court.'"  See id.  In particular, the Co Petro court distinguished the Eighth Circuit's decision in Missouri on the basis that:

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

1

2

3

4

5

> [i]n *Missouri*, the regulatory law in question was a state law empowering the state to operate and liquidate insolvent grain warehouses. If the state court suit under that law had been allowed to proceed, it would have conflicted with the administration of the debtors' estate in the bankruptcy court. In this case, allowing the district court to enforce its injunction against transferring Co Petro assets does not conflict with the administration of the estate in the bankruptcy court; in fact, it will aid in that administration.

6

7

See id.  Consequently, the Co Petro court found that the order enforcing the injunction was within the "police and regulatory exception to the automatic stay.  See id.

8

9

10

11

12

13

14

15

16

17

In S.E.C. v. Towers Fin. Corp., 205 B.R. 27 (S.D.N.Y. 1997),  the SEC brought an action against a Chapter 7 debtor who was involved in an alleged Ponzi scheme by which promissory notes were sold, seeking injunctive relief and disgorgement.   See 205 B.R. at 28.   After discovery in the SEC action concluded, the SEC moved to prevent the debtor from testifying or presenting evidence at trial.   See id.  The Chapter 7 debtor asserted that the SEC's action was stayed by operation of Section 362(a), maintaining that the government exemption from the automatic stay was not applicable because he was in no position to continue to violate the securities laws and, thus, the SEC was essentially seeking pecuniary benefit and nothing more. See id.  The court analyzed Section 362(b)(4) to determine whether the SEC action was in fact stayed. See id. at 29.

18

The court began by looking to Section 362's legislative history which provided:

19

20

21

22

23

> Section 362(b)(4) indicates that the stay under section 362(a)(1) does not apply to affect the commencement or continuation of an action or proceeding by a governmental unit to enforce the governmental unit's police or regulatory power. ***This section is intended to be given a <u>narrow construction</u> in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.***

24

25

26

27

28

See id. (emphasis added).   The Towers court found that the SEC seeking disgorgement as a remedy was a furtherance of its police powers under securities law because "[t]he effective enforcement of the securities laws requires that the SEC be able to make violations unprofitable. The deterrent effect of an SEC enforcement action would be greatly undermined if securities

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc                21

1    laws violators were not required to disgorge illicit profits." See id. at 30 (quoting Securities &

2    Exchange Commission v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1104 (2nd Cir. 1971)).

3    The Towers court wrote that "[w]hile there is no question that the automatic stay provisions

4    prevent the SEC from attempting to enforce any disgorgement award, this Court is satisfied that

5    the mere fixing of the award is well within the provisions of 11 U.S.C. § 362(b)(4)." See id.

6        1.    The Filing of the Complaint Falls Within the Section 362(b)(4) Exception as
              it Relates to the Debtors.

7

8        Although the SEC violated subsection (a)(1), (a)(3), (a)(6) of Section 362 when it filed

9    the Complaint against the Debtors, the mere act of filing the Complaint and proceeding to

10   judgment against the Debtors appears to be an exception from the automatic stay pursuant to

11   Section 362(b)(4).  See First Aliance, 263 B.R. at 107.  However, as the authorities cited above

12   clearly hold, if and when a money judgment is obtained against the Debtors, no further action to

13   enforce it outside the Chapter 11 Cases is allowed.

14       It must also be noted that, as previously discussed, avoidance actions, including those

15   arising under Sections 548 and 550, are property of the Debtors' estates.  To the extent that

16   avoidance actions arise as a result of an alleged Ponzi scheme (which the Debtors do not at this

17   time admit existed with regard to the Prepetition Comp Plans), any action by the SEC in the SEC

18   Action to seek to assert a right to recover moneys as a result of the alleged Ponzi scheme and

19   distribute such moneys to rightful recipients per an order of the District Court as set forth in the

20   prayer to the Complaint is a violation of Section 362(a), and, as such, such actions are not

21   excepted under Section 362(b)(4).

22       2.    Provisions of the TRO Which The Debtors Agree are Exceptions under Section
              362(b)(4).

23       In general, the Debtors recognize that as to the other defendants, the automatic stay of

24   Section 362(a) does not apply with regard to the actions of the SEC under the Complaint and the

25   TRO in restraining and enjoining their actions in Sections I, II, III, VI, VI, VII, VIII, IX and X.

26   Notwithstanding, the Section 362(b)(4) exception would not include the SEC seeking to recover

27   pursuant to the TRO or any preliminary injunction or other order of the District Court (a) the

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc                          22

1   assets of the other defendants or third parties based upon the alleged Ponzi Scheme which are

2   determined to be assets of the Debtors estates pursuant to Sections 548 and 550, and (b) the

3   Debtors reserve the right to assert the automatic stay is applicable to actions of the SEC under

4   the Complaint and TRO with regard to Telex Electric and Telex Mobile.  With regard to the

5   latter, the Debtors have just begun to investigate their relationships to these defendants and at

6   this time are not able to ascertain whether the expansive provisions of Section 362 would apply.

7        As for the Debtors, they have no dispute with Sections I, II, III and IX of the TRO.  First,

8   while the Debtors do not admit that the Prepetition Comp Plans violated the Securities Act or the

9   Exchange Act, the Debtors do not intend to, nor are they allowed to, violate any provisions of the

10  Securities Act or Exchange Act.  Moreover, the Debtors ceased the allegedly violative conduct

11  prior to the filing of the Chapter 11 Cases.  Second, the Debtors concede as the TRO relates to

12  them, these provisions fall within the exception provided in Section 362(b)(4).

13       3.    Provisions of the TRO Which are Not Excepted under Section 362(b)(4).

14       Sections IV, V, and VII of the TRO (i) restrain and enjoin the Debtors from using,

15  transferring or dissipating their assets in any manner, (ii) direct any bank, brokerage or other

16  financial institution which has assets of any of the defendants to freeze and deny the Debtors

17  access to such funds as well as opening any new bank account (the "**Freeze Provision**"), and

18  (iii) require the turnover of any funds and assets of the Debtors to the registry of the District

19  Court (the "**Turnover Provision**").   The Freeze and Turnover Provisions violate Section

20  362(a)(3), which prohibits "any act to obtain possession of property of the estate or of property

21  from the estate or to exercise control over property of the estate."  See 11 U.S.C. § 362(a)(3).

22  These provisions do not fall within Section 362(b)(4)'s exception.  See Continental, First

23  Alliance, and Co Petro.  See also Brennan (repatriation order dealing with offshore assets was

24  part of SEC's effort to enforce a money judgment and was thus entered in violation of automatic

25  stay).  These provisions also conflict with the Debtors' rights as debtors-in-possession to operate

26  their business and use their assets in the ordinary course as provided for in Sections 363(c)(1)

27  and 1108.  As a result, the Freeze Provision and Turnover Provision are void as a matter of law

28  and of no effect.  See Schwartz, 954 F.2d at 572 ("Our conclusion is supported by the great

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

23

1   weight of authority. The majority of courts have long stated that violations of the automatic stay

2   are void and of no effect.").

3          Section VI of the TRO which requires the Debtors to submit a full accounting of all

4   alleged transfers or payments of funds related to the alleged violations in the Complaint as well

5   as all assets presently held by the Debtors, and Section X which authorizes the SEC to begin civil

6   discovery as to the Debtors, do not fall within the Section 362(b)(4) exception and are

7   duplicative of provisions of the Code and the Rules which provide for an accounting and

8   discovery.  See Co Petro and Missouri.  The Debtors are required to provide in their schedules all

9   assets of the estates and in their statement of affairs certain transfers of funds.  To the extent

10  there is other information that the SEC desires, the provisions of Rule 2004 for examination and

11  production of documentation is available.[5]

12         Finally, Section VIII of the TRO is violative of Section 362(a) in part.  It prohibits the

13  Debtors "...from soliciting, accepting or depositing any moneys received from investors or

14  promoters;"  The Debtors are empowered and obligated to bring into their estates what would be

15  assets as defined in Section 541.  To the extent "investors" or "promoters" are subject to

16  avoidance actions pursuant to Sections 547, 548 and 550, Section VIII prohibiting the Debtors

17  from "soliciting, accepting or depositing" such recovered assets of the estates is violative of

18  Section 362(a) and null and void.  Further, in implanting a new business plan, the Debtors may

19  seek to do business with these individuals in the future.

20         The SEC is likely to argue that it has not attempted to "enforce" the objectionable

21  provisions of the TRO.  However, by the very terms of the TRO, mere service of the TRO is

22  enforcement.  For instance, the Freeze Provision provides:

23         B.    ***All banks, brokerage and other financial institutions*** (including
               but not limited to Bank of America, Citizens Bank, Fidelity Cooperative
24             Bank, Banco do Brazil-Miami, Digital Credit Union, American Express
               Bank, Bonneville Bank (Green Dot Bank), Citibank, Commerce Bank and
25             Trust Company, Discover Bank, Waddell & Reed, Middlesex Savings
               Bank, Royal Bank of Scotland, TD Bank, Wells Fargo, Banterra Bank,

26

27  ───────────────
    [5] An additional problem with Section VI is that the accounting is for "funds related to the alleged violations in the
    Complaint…"  Until there is an admission or court determination that any or all of the defendants violated the
28  Exchange Act or Securities Act, it could (and most likely will) be argued that no accounting is required.

                                                        24

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

Infinex Investments, Bank of New England, Eastern Bank, First Citizens' Federal Credit Union, and PNC Bank) and other persons or entities (including but not limited to payment processors, investors and/or promoters) ***that receive actual notice of this Order by personal service or otherwise***, including via facsimile or email transmission, or overnight delivery service, holding any funds or other assets in the name, for the direct or indirect benefit, or under the direct or indirect control of defendants or over which defendants exercise actual or apparent investment or other authority, in whatever form such assets may presently exist and wherever located, ***shall hold and retain within their control and prohibit the withdrawal, removal, sale, payment (including, but not limited to, any charges on any credit card or draws on any other credit arrangement), transfer, dissipation, assignment, pledge, alienation, encumbrance, diminution in value, or other disposal of any such funds or other assets; and that such funds and assets are hereby frozen.***

See TRO at 6 (emphasis added).  Consequently, the SEC's mere service of the TRO is the enforcement in violation of the provisions of Section 362(a), not excepted from the automatic stay under Section 362(b)(4).[6]

**H.    The Bankruptcy Court is Best Suited to Provide the Relief the SEC Seeks.**

The Debtors dispute the underlying allegations contained in the SEC Complaint; however, assuming arguendo that the Prepetition Comp Plans were Ponzi schemes, it is widely recognized that Ponzi schemes necessarily give rise to extensive avoidance powers and presumptions in favor of a debtor in possession in a Chapter 11 case acting pursuant to Section 1107.  The premise underlying all avoidance litigation, namely advancing the Code's goal of equality of distribution, has a particularly pronounced meaning in the context of a Ponzi scheme. The economic loss attributable to a fraudulent scheme falls disproportionately on those that have not been repaid some or all of their principal investment while those who received stolen funds in excess of their principal investment have received a substantial benefit.

The Code's avoidance powers permit, among other things, a debtor in possession to set aside and recover payments or other transfers made by the perpetrator of a Ponzi scheme to

---

[6] Even when a governmental action is excepted from the stay under Section 362(b)(4), the bankruptcy court retains the power under Section 105 to enjoin an action by a governmental unit when an injunction is necessary and appropriate to protect the debtor's reorganization or rehabilitation effort.  See United States v. Commonwealth Cos. (*In re* Commonwealth Cos.), 913 F.2d 518, 527 (8th Cir. 1990); In re W.R. Grace & Co., 384 B.R. 678 (Bankr. D. Del. 2008).  Thus, "[t]o the extent that the exercise of a [governmental proceeding] threatens the assets of the debtor's estate, the bankruptcy court may issue a stay of those proceedings." In re Metro Transp. Co., 64 B.R. 968, 973 (Bankr. E.D. Pa. 1986) (citing Sec. & Exch. Comm'n v. First Fin. Grp. of Texas, 645 F.2d 429, 440 (5th Cir. 1981)).  See also In re Tucson Yellow Cab Co., 21 B.R. 166, 168 (Bankr. D.Ariz. 1982).

25

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

redress the inherently unfair distribution of stolen funds.  In that way, the Code rectifies the illicit

method by which funds are laundered in a Ponzi scheme, and in its place, transplants a new

method — one which represents the equitable determination by Congress that creditors must be

treated equally in cases of insolvency or fraud.

The debtor in possession's avoidance powers extend beyond initial transferees to include

subsequent transferees of funds derived from the Ponzi scheme pursuant to 11 U.S.C. § 550.

Initial transferees that have received transfers derived from a Ponzi scheme have, in many

instances, passed the funds on to subsequent transferees who may hold liability to the trustee

pursuant to the Section 550 claims he holds against them.  Transfers made by initial transferees

to subsequent transferees may be the subject of activities by the trustee or debtor in possession

outside the United States.

To the extent required, the Debtors can also seek authority of this Court to retain

international legal professionals to proceed to recover avoidable assets of their estates to the

extent the Debtors determine that certain subsequent transferees of funds derived from a Ponzi

scheme may be located in foreign countries.  See 11 U.S.C. §§ 1501(b)(2) and 1505.

Considering the factors bankruptcy courts apply in determining whether to abstain and

dismiss a properly filed bankruptcy case demonstrates why the invocation of this Court's

jurisdiction is in the best interests of the Debtors and their creditors.  The abstention analysis

requires that the Court consider:

> (1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

See In re Marciano, 459 B.R. 27, 46-47 (B.A.P. 9th Cir. 2011) aff'd, 708 F.3d 1123 (9th Cir.

2013).

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

26

1    The Debtors filed the Chapter 11 Cases and invoked this Court's jurisdiction to obtain

2  breathing room to address its operational and regulatory issues, revise its operations, recover

3  assets of their estates, and quantify and address the claims asserted against them.  The Debtors

4  believe that a restructuring of their debt, recovery of assets of their estates, adoption of a post-

5  petition revised compensation plan, unveiling of new products (including the TelexFree app),

6  and return to growing their Customer base will allow the Debtors to realize their full potential

7  and generate significant value for their creditors.  As such, the Chapter 11 Cases provide the

8  most economical means to administer the Debtors' estates and liquidate the claims of the

9  Debtors' creditors.

10    While the District Court is another forum available to protect the interests of the Debtors'

11  creditors, the Code provides extraordinary authority to avoid preferential and fraudulent

12  transfers, including transfers to self-settled trusts and similar devises, with a reach back period of

13  up ten years from the Petition Date.  See 11 U.S.C. §§ 544, 547, 548(a) & (e).  The Code also

14  confers authority to recover from subsequent transferees with a statute of limitation which begins

15  to run only once a judgment is entered against the initial transferee under Section 548, and

16  permits the Court to subordinate all or part of a claim based upon equity.  See 11 U.S.C. §§ 550

17  & 510(c).   These extraordinary powers, in additional to the benefit that Section 362(a)'s

18  breathing spell confers upon the Debtors while they restructure their financial obligations and

19  revise their business operations, present the Debtors' creditors with the greatest chance of full

20  recovery of their claims.  Accordingly, the BAP has pronounced that:

21        [t]he Bankruptcy Code is not exclusively a remedy for debtors. … If the
         bankruptcy court orders relief, creditors benefit from potent protections
22        afforded to them by the Code, including, depending upon the facts,
         appointment of a trustee to manage or liquidate a debtor's assets,
23        investigation of the debtor's financial affairs, assertion of the avoiding
         powers to recover transfers to benefit all creditors, and application of the
24        equitable disbursement scheme to the claims of creditors to ensure that all
         those similarly situated share equally.
25
See In re Macke Int'l Trade, Inc., 370 B.R. 236, 245-46 (B.A.P. 9th Cir. 2007).
26
27    The invocation of the protections afforded by the Code is necessary where, like here, it is

28  essential to protect creditors and investigate, account for, and protect of the Debtors' assets.  See

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

1   In re Apache Trading Group, Inc., 229 B.R. 891, 894 (Bankr. S.D. Fla. 1999) (citing In re CLE

2   Corp., 59 B.R. 579, 584 (Bankr. N.D. Ga. 1986)).  This Court possesses exclusive bankruptcy

3   powers and remedies that may be used to recover transferred assets, to insure an orderly ranking

4   of creditors' claims and to protect against other creditors obtaining a disproportionate share of

5   Debtors' assets.  See In re Marciano, 446 B.R. 407, 419 (Bankr. C.D. Cal. 2010) aff'd, 459 B.R.

6   27 (B.A.P. 9th Cir. 2011) aff'd, 708 F.3d 1123 (9th Cir. 2013); In re Hentges, 351 B.R. 758, 772

7   (Bankr. N.D. Okla. 2006).  Furthermore, creditors may also use the bankruptcy process to install

8   a trustee to prevent future transfers or wasting or dissipation of assets or to investigate and to

9   challenge the legitimacy of entities that may be operating as alter egos of a debtor.  See Hentges,

10   351 B.R. at 772.  Thus, not only do the Chapter 11 Cases present the most economical means of

11   administration, they also present the only proceedings which can obtain a just and equitable

12   solution and distribution of assets for the Debtors and their creditors.

13          The Chapter 11 Cases also represent the most efficient and least expensive means of

14   working out an arrangement between the Debtors and their creditors.  The Chapter 11 Cases

15   present one centralized venue with interstate jurisdiction where any claims against the Debtors

16   can be resolved in a quick and efficient manner.  Rules and procedures are already in place as to

17   the preservation and recovery of estate assets as well as related to the liquidation and

18   administration of claims against the Debtors.  On the other hand, the action before the District

19   Court will undoubtedly be intensely litigated, and will likely be drawn out for years.  The District

20   Court will have to put in place special rules and procedures to recover the Debtors' assets and

21   administer the claims of the Debtors' creditors.  Forcing the Debtors to litigate the contentious

22   action before the District Court, while denying the Debtors the opportunity to restructure their

23   financial obligations and revise their business operations, will only serve to deplete the Debtors'

24   assets, reduce the payment of creditors' claim, and doom the Debtors' business.

25          Moreover, as the proceeding before the District Court was commenced after the Petition

26   Date, that action has not proceeded so far as to make the continuance of the Chapter 11 Cases

27   costly and time consuming.  Finally, the Debtors' invocation of this Court's jurisdiction was in

28   good faith.  The Debtors believe that a restructuring of their debt, recovery of assets of their

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

28

estates, adoption of a post-petition revised compensation plan, unveiling of new products (including the TelexFree app), and return to growing their Customer base will allow the Debtors to realize their full potential and generate significant value for their creditors. Consequently, the Debtors' invocation of this Court's jurisdiction is not only in their best interest, but also in the best interests of the Debtors' creditor and the SEC.

## V.
## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that this Court enter an order determining: (I) that seeking to enforce a judgment against the Debtors or seeking to recover assets from the other defendants or third parties as a result of an alleged Ponzi Scheme under the Complaint without first seeking relief from the automatic stay of Section 362(a) is prohibited; and  (II) that Sections (IV), (V),  (VI), (VII), (VIII), (IX) and (X) of the TRO as they relate to the Debtors violate the automatic stay of Section 362(a), are not within the exception of Section 362(b)(4) and are null and void and of no force and effect.

DATED this 23rd day of April, 2014.

GORDON SILVER

By: ___/s/ Mark M. Weisenmiller___
  GREGORY E. GARMAN, ESQ.
  THOMAS H. FELL, ESQ.
  TERESA M. PILATOWICZ, ESQ.
  MARK M. WEISENMILLER, ESQ.
  3960 Howard Hughes Pkwy., 9th Floor
  Las Vegas, Nevada 89169

  AND

  NANCY A. MITCHELL *(pro hac vice)*
  MARIA J. DICONZA *(pro hac vice)*
  JOSEPH P. DAVIS *(pro hac vice)*
  GREENBERG TRAURIG, LLP
  The MetLife Building
  200 Park Avenue
  New York, New York 10166
  *Proposed Counsel for the Debtors*
  *and Debtors in Possession*

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104590-002/2270072_5.doc

29