**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| TELEXFREE, LLC, TELEXFREE, INC. AND TELEXFREE FINANCIAL, INC. | Case Nos. 14-40987-MSH, 14-40988-MSH, and 14-40989-MSH |
| Debtors. | (Jointly Administered) |

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 105(a) AND 363(b) AUTHORIZING RETENTION AND EMPLOYMENT OF STUART A. MACMILLAN AS INTERIM CHIEF EXECUTIVE OFFICER FOR THE DEBTORS <u>*NUNC PRO TUNC* TO THE PETITION DATE</u>**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), hereby submit this application (the "**Application**") for entry of an order, pursuant to sections 105(a) and 363 of title 11 of the United States Code §§ 101, *et seq.* (the "**Bankruptcy Code**"): authorizing the retention and employment of Stuart A. MacMillan as Interim Chief Executive Officer (the "**Interim CEO**" or "**Mr. MacMillan**") to the Debtors *nunc pro tunc* as of the Petition Date, and providing any additional relief required in order to effectuate the foregoing. The facts and circumstances supporting this Application are set forth in the declaration of Stuart A. MacMillan (the "**MacMillan Declaration**"), which is attached hereto as **Exhibit A** and incorporated herein by reference. In further support of this Application, the Debtors respectfully state as follows:

**Status of the Case and Jurisdiction**

1.      On April 13, 2014 (the "**Petition Date**"), the Debtors commenced these cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtors have continued in possession of their properties and are operating

and managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.  A creditors' committee has not yet been appointed in the Chapter 11 Cases.

4.  On May 6, 2014, these Chapter 11 Cases were transferred from the United States Bankruptcy Court for the District of Nevada to the United States Bankruptcy Court for the District of Massachusetts, Central Division.

5.  The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. § 1408.  This matter is core within the meaning of 28 U.S.C. § 157(b)(2)(A).

6.  The statutory predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code.

## Background

7.  A detailed factual background of the Debtors' businesses and operations, as well as the events precipitating the commencement of these Chapter 11 Cases, is more fully set forth in the *Omnibus Declaration of William H Runge III in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "**First Day Declaration**") filed contemporaneously herewith and incorporated herein by reference.

## Retention of Stuart A. MacMillan

8.  Stuart A. MacMillan is a consultant with Impact This Day, Inc. ("**ITD**"). Mr. MacMillan has over 25 years of management experience, the last 15 of which have been in direct selling and multi-level marketing companies.  Among other management positions, Mr. MacMillan previously served as the first International President of Excel Communications, a multi-level marketing telecommunications company, and later as the President of Excel

2

Communications in Canada. Mr. MacMillan also acted as the first Managing Director of Arbonne Canada.

9. Mr. MacMillan began consulting with the Debtors in early March 2014. The scope of his services included development and implementation of a revised compensation plan, development of new products and services, implementation of accounting systems, obtaining regulatory approvals, development of telecommunications analytics and protocols, reorganization and assessment of existing talent, searching for new talent and other management matters. MacMillan did not have a pre-existing relationship with the Debtors, the Debtors' management or the Debtors' equity holders prior to this initial engagement.

10. On April 13, 2014, immediately prior to the filing of these Chapter 11 Cases, Mr. MacMillan became the Interim Chief Executive Officer of the Debtors, pursuant to that certain engagement letter agreement by and between the Debtors and ITD (the "**Engagement Letter**"), attached to the MacMillan Declaration as **Exhibit 1**. Further, on April 13, 2014 and prior to the filing of these Chapter 11 Cases, Mr. MacMillan was elected to serve as an independent director of TelexFree, Inc. and TelexFree Financial, Inc, and an independent member of the Board of Managers of TelexFree, LLC.

## Relief Requested

11. By this Application, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors request entry of an order authorizing the retention and employment of Stuart A. MacMillan as Interim CEO to the Debtors *nunc pro tunc* as of the Petition Date. Mr. MacMillan will make decisions regarding the Debtors' reorganization efforts and their Chapter 11 Cases, as further described below.

3

12. Mr. MacMillan is well qualified to act on the Debtors' behalf given his knowledge and expertise with respect to multi-level marketing companies. In addition, Mr. MacMillan has taken steps to become familiar with the Debtors' business and financial affairs. Accordingly, the Debtors submit that the retention of Mr. MacMillan on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

### Scope of Employment

13. The terms and conditions of Mr. MacMillan's retention are governed by the Engagement Letter, which reflects the substantial efforts required of the Interim CEO in this engagement.[1] Pursuant to the terms of the Engagement Letter, Mr. MacMillan has the authority to make decisions regarding management and operations of the Debtors and the Debtors' restructuring process and execute binding agreements on behalf of the Debtors, and has been performing such duties for the Debtors since his retention. Further, pursuant to the Engagement Letter, Mr. MacMillan performs all services, acts, or things necessary or advisable to manage and conduct the business of the Debtors which are normally associated with the position of Chief Executive Officer.

### Professional Compensation

14. Pursuant to the Engagement Letter, for the services of Mr. MacMillan, the Debtors agreed to pay Mr. MacMillan a monthly, non-refundable fee of $50,000. In addition, the Debtors agreed to reimburse Mr. MacMillan for his reasonable out-of-pocket expenses incurred in connection with his engagement, including attorney's fees, travel, lodging, meals, telephone and

---

[1] The summaries of the Engagement Letter contained herein are solely for the convenience of the Court and parties in interest. To the extent that such summaries and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control. Capitalized terms not otherwise defined in such summaries shall have the meanings ascribed to them in the Engagement Letter.

BOS 47466345v6

internet, duplicating, messenger, secretarial and personal legal fees. All fees and expenses are billed and payable on a monthly basis, or at Mr. MacMillan's discretion, more frequently.

15. Prior to the Petition Date, the Debtors remitted to Mr. MacMillan a retainer in the amount of $180,000 (the "**Retainer**"), as described in the Engagement Letter. Any balance of the Retainer remaining after application to any prepetition professional services and related expenses will be held as a general retainer and applied to the payment of postpetition fees and expenses subject to any applicable orders of this or any other courts.

### Termination of Engagement

16. Mr. MacMillan's engagement may be terminated for the reason's set forth in the Engagement Letter.

### Indemnification and Contribution Provisions

17. The Debtors have agreed to indemnify, to make certain contributions to, and to reimburse Mr. MacMillan in connection with the Engagement Letter pursuant to terms wet forth therein.

18. The indemnification, contribution, and reimbursement provisions reflected in the Engagement Letter are customary and reasonable terms of consideration for Interim CEOs providing the services described in the Engagement Letter. The terms of the Engagement Letter were fully negotiated between the Debtors and Mr. MacMillan at arm's-length and the Debtors respectfully submit that the indemnification language in the Engagement Letter is reasonable and in the best interests of the Debtors, their estates, and creditors.

### Mr. MacMillan's Disinterestedness

19. To the best of the Debtors' knowledge, information, and belief, Mr. MacMillan has no connection with, and holds no interest adverse to, the Debtors, their creditors, or any other party in interest, or their respective attorneys or accountants, or the Office of the United States

Trustee or any person employed in the Office of the United States Trustee, in the matters for which the Interim CEO is proposed to be retained except as disclosed in the MacMillan Declaration.

20.     The Debtors attach the MacMillan Declaration, which discloses, among other things, any relationship that Mr. MacMillan has with the Debtors, their significant creditors, or other significant parties in interest. Based upon the MacMillan Declaration, the Debtors submit that Mr. MacMillan is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

21.     In addition, as set forth in the MacMillan Declaration, if any new material facts or relationships are discovered or arise, Mr. MacMillan will provide the Court with a supplemental declaration.

22.     The Debtors submit that the retention of Mr. MacMillan on the terms and conditions set forth herein is in the best interests of the Debtors, their creditors, and all parties-in-interest.

## Basis for Relief Requested

23.     The Debtors seek approval of the employment of Mr. MacMillan pursuant to section 363 of the Bankruptcy Code, *nunc pro tunc* to the Petition Date. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

6

24. Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

25. The retention of Mr. MacMillan is a sound exercise of the Debtors' business judgment. Mr. MacMillan has extensive management experience, as well as experience in direct selling and multi-level marketing companies. The Debtors have determined that Mr. MacMillan will provide services that benefit the Debtors' estates and creditors. In light of the foregoing, the Debtors believe that the retention of Mr. MacMillan is appropriate and in the best interests of the Debtors and their estates and creditors.

26. The retention of interim corporate officers and other temporary employees, therefore, is proper under section 363 of the Bankruptcy Code. Bankruptcy courts frequently authorize the retention of officers utilizing this provision of the Bankruptcy Code. *See, e.g., In re Texas Rangers Baseball Partners*, Ch. 11 Case No. 10-43625 (DML) (Bankr. N.D. Tex. June 28, 2010) [Docket No. 28]; *In re Blue Stone Real Estate, Const. & Development Corp.*, 392 B.R. 897 (Bankr. M.D. Fla. 2008); *In re Lehman Bros. Holdings, Inc.*, Ch. 11 Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 17, 2008) [Docket No. 2278]; *In re PRC, LLC*, Ch. 11 Case No.

08-10238 (MG) (Bankr. S.D.N.Y. Feb. 27, 2008) [Docket No. 182]; *In re Bally Total Fitness of Greater N.Y., Inc.*, Ch. 11 Case No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug. 21, 2007) [Docket No. 283]; *In re Exide Technologies, Inc., et al.*, (Case No. 02-11125) (JCA) (Bankr. D. Del. May 10, 2002).

27. Based upon the foregoing, the Debtors submit that the retention of Mr. MacMillan on the terms set forth herein and in the Engagement Letter, would inure to the benefit of the Debtors' estates and their creditors. Moreover, Mr. MacMillan is clearly qualified for the position for which he is being employed. The Debtors have determined that the compensation terms of the Engagement Letter are within the range for senior executive officers employed with companies of comparable size, value and reputation. Accordingly, the Debtors' decision to retain Mr. MacMillan pursuant to the terms of the Engagement Letter reflects an exercise of the Debtors' sound business judgment.

**Request for Approval of Retention of the Interim CEO**
***Nunc Pro Tunc* as of the Petition Date**

28. The Debtors request that Mr. MacMillan's retention be made effective *nunc pro tunc* as of the Petition Date, in order to allow Mr. MacMillan to be compensated for the work he performed for the Debtors prior to the Court's consideration and approval of this Application. The Debtors submit that under the circumstances, the Debtors would have suffered irreparable harm if Mr. MacMillan was not immediately retained, as at the time of his retention, the Debtors' former management was not in position to continue operating the company due to the burdens of regulatory investigations pending against the Debtors. As such, Mr. MacMillan's immediate retention was necessary to preserve the Debtors' business as a going concern. In addition, the Debtors' filing of this Application was delayed by the transfer of venue of these cases and the stay of proceedings pending the transfer. Accordingly, retroactive approval to the Petition Date

of Mr. MacMillan's retention is warranted. *See, e.g., In re National Home Centers, Inc.,* Case No. 09-76195 (Bankr. W.D. Akr. Jan. 21, 2010) *Order Authorizing Amended Application of Debtor to Employ Attorneys* (authorizing employment of debtor's counsel *nunc pro tunc* to debtor's petition date); *F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.)*, 844 F.2d 99, 103 (3d Cir. 1988), cert. denied, 488 U.S. 852 (1988); *Indian River Homes, Inc. v. Sussex Trust Co.*, 108 B.R. 46, 51 (D. Del. 1989) (approval of debtor's employment of attorney and real estate agent as of a prior date was not an abuse of discretion).

### Notice

29. Notice of this Application is being given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Massachusetts, Central Division; (b) creditors holding the thirty (30) largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions; (c) those parties requesting notice pursuant to Rule 2002; (d) the Office of the United States Attorney General for the District of Massachusetts; (e) the Internal Revenue Service; (f) the Massachusetts Securities Division; (g) Massachusetts Department of Taxation, Bankruptcy Section; (h) Dept. of Employment, Training & Rehab, Employment Security Division; and (i) the Securities and Exchange Commission. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

30. No prior request for the relief sought in this Application has been made to this Court or any other court.

**Conclusion**

WHEREFORE, the Debtors respectfully request that the Court enter an Order, authorizing the retention and employment of Stuart A. MacMillan as Interim Chief Executive Officer to the Debtors *nunc pro tunc* as of the Petition Date, and providing any additional relief required in order to effectuate the foregoing.

Dated: May 28, 2014                             GREENBERG TRAURIG, LLP

By: /s/ Joseph P. Davis
    Joseph P. Davis (BBO#551111)
One International Place, 20th Floor
Boston, MA 02110
Tel: (617) 310-6000
Fax: (617) 310-6001
davidjo@gtlaw.com

*Proposed Counsel for the Debtors
and Debtors in Possession*

BOS 47466345v6