UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>TELEXFREE, LLC,<br>TELEXFREE, INC., and<br>TELEXFREE FINANCIAL, INC.,<br><br>                Debtors | Chapter 11 Cases<br><br>14–40987–MSH<br>14–40988–MSH<br>14–40989–MSH<br><br>Jointly Administered |

**DOMESTIC AND INTERNATIONAL CLASS REPRESENTATIVES'
OBJECTION TO MOTION BY THE CHAPTER 11 TRUSTEE TO
ESTABLISH OMNIBUS PROCEDURES FOR THE RESOLUTION OF
DISPUTED PARTICIPANT CLAIMS**

Frantz Balan, Marco Puzzarini, and Sandro Paulo Freitas, as Class Representatives of the domestic and international classes of defendants in Adversary Pros. 16–4006 and 16–4007 hereby object on behalf of the respective Defendant Classes of Net Winners to the Motion by the Chapter 11 Trustee to Establish Omnibus Procedures for the Resolution of Disputed Participant Claims ("Trustee's Motion")[Docket 921].

The Class Representatives oppose the Trustee's proposed claim resolution procedures on five grounds. First, the Trustee's approach does not give the Net Winner Defendants, as parties in interest, an opportunity to review and object to other participant claims that assert ownership over the same User Accounts also claimed by the Net Winners. Second, any omnibus objection against Net Winners will relate to Net Winner User Accounts and general defenses and therefore should be adjudicated in the adversary proceedings, affording the Class Representatives the opportunity to respond on behalf of the Class. Third, all Net Winners who have filed claims through the

Trustee's online system should be identified by the Trustee as a Net Winner and given an opportunity to have their claim determined in an individualized damages proceeding as part of the Net Winner Adversary Proceedings. Fourth, because the Class Representatives' class claims are inapposite to standard Participant claims and not suited to the Trustee's electronic claims resolution process, these class claims should also be carved out and adjudicated in the Net Winner Adversary Proceedings. Fifth, the Trustee's proposal on claims procedures should not be approved by this Court until the Trustee's aggregation techniques have been further reviewed, tested, and improved by the input and comments of the Net Winner experts, and approved by this Court.

## INTRODUCTION

In his Motion, the Trustee asks to waive certain requirements set forth in Federal Rule of Bankruptcy Procedure 3007 and Mass. Local Bankruptcy Rule ("MLBR") 3007. Bankruptcy Rule 3007(a) generally provides that objections to claims must be made in writing, filed with the Court, and accompanied by a notice of hearing. Further, under Bankr. R. 3007(c) and (d) a Trustee can object to multiple parties' claims at once using an omnibus objection, but only if the objection is one of the types listed in the rule. The Trustee asks the Court to expand the parameters of Bankr. R. 3007(a) to allow him to object to and resolve some participant claims using his proposed claim allowance form, and using the claims allowance procedures spelled out in the Motion. This would allow the Trustee to resolve many claims without making individual filings and without noticing a hearing as required by Bankr. R. 3007(a).

The Trustee also asks for an expansion of authority under Bankr. R. 3007 (c) and (d), allowing him to make different types of omnibus objections to participant claims. The categories of proposed omnibus objections are:

(i) Multiple Participants claimed ownership of one or more of the same User Accounts;

(ii) Participants deleted User Accounts associated with them by the Debtors' records without adequate explanation or documentation;

(iii) Participants added User Accounts that were not associated with them by the Debtors' records without adequate explanation or documentation;

(iv) Participants added or deleted a transaction or adjusted a transaction amount in a User Account without adequate explanation or documentation;

(v) Participants adjusted the amount of their claim based on transactions not consistent with the Net Equity formula, without adequate explanation or documentation;

(vi) Participants asserted claims in foreign currencies or asserted punitive claims or other claims that do not qualify for allowance under the Net Equity formulation approved by the Court; and

(vii) The claims are objectionable under Sections 502(d) of the Bankruptcy Code.

(Trustee's Motion, ¶ 57)

While the Trustee may propose procedures to conserve judicial resources, the Trustee still has an obligation to accurately calculate participate claims, and accurately aggregate all User Accounts to individual participants. Pursuant to this Court's January 26th, 2016 Order regarding Net Equity("Net Equity Order")[Docket 687]:

- Participant Claims shall be computed by calculating the amount invested by the Participant into the Debtors' scheme, including amounts paid pursuant to Triangular Transactions, less amounts received by the Participant from the

>   Debtors' scheme, including amounts received pursuant to Triangular Transactions; and
>
> - In determining the amount of a claim of a Participant who has more than one User Account, the activity in all of the Participant's User Accounts shall be aggregated and netted against one another.

Consistent with the Net Equity Order, the Trustee has an obligation to properly calculate participant claims.

## THE "AGGREGATION" PROBLEM

Aggregation is necessary because participants often had multiple user accounts, some "winners" and some "losers" in the TelexFree scheme. In order to establish whether a participant is a "net-loser" or "net-winner" the Trustee needs to aggregate all User Accounts owned by a participant and assign them to the participant-owner. If the Trustee fails to properly assign a User Account, then the Trustee's calculation of a participant's claim against the bankruptcy estate or liability to the bankruptcy estate could be less or more, depending on whether the missed User Account was a "winner" or "loser" in the TelexFree scheme. If the Trustee accurately assigns a "winner" User Account to a participant but fails to properly assign one of the participant's "loser" User Accounts, then participant's net equity claim, as calculated by the Trustee, would be inflated. Accordingly, effective User Account aggregation is essential to ensure accurate claims calculation. A failure to properly aggregate User Accounts could even make a Participant appear to be a Net Winner, when in fact the Participant is actually a Net Loser.

The Trustee's method of aggregation employs selected common identifiers which help the trustee assign multiple User Accounts to particular participants. This is a 13-step process that utilized combinations of name, login, email, phone, address, and secondary password information (or portions thereof) to group sub-accounts under a single master account.

After conducting limited testing of the Trustee's aggregation methods, the Net Winner's Expert has determined that the Trustee's approach may not fully aggregate all User Accounts owned by a particular participant. This preliminary finding is concerning to the Net Winners because failed aggregation will result in inaccurate calculations of the Trustee's claims against them.

THE TRUSTEE'S ASSUMPTION THAT CASH TRANSFERS ARE DOCUMENTED

As the Trustee concedes, the Net Equity Order requires the Trustee to calculate "the amount *invested* by the Participant into the Debtors' scheme, including *amounts paid* pursuant to Triangular Transactions, *less amounts received* by the Participant from the Debtors' scheme, including amounts received pursuant to Triangular Transactions." (Trustee's Motion, ¶ 33). Thus, at least in the adversary proceedings brought against alleged Net Winners ("Net Winner Adversary Proceedings"), the Trustee is burdened with demonstrating how much money changed hands between Participants and between a Participant and TelexFree.

But in Participant-to-Participant transactions, however, the amounts reflected in the SIG system do not at all show the "amount invested" or "paid." Nor does SIG show the "amounts received" by one Participant from another. Instead, the SIG data merely

5

shows face amounts of invoices that were paid with what the Trustee' contends were worthless credits. To this transaction data, Trustee hitches an assumption that money changed hands in exact correlation with the amount of paid invoices. This is the essence of the Trustee's calculations, both to determine the amount of net losses and to determine the amount of each Net Winner's liability. Class Defendants' have retained StoneTurn Group to, among other things, opine on whether the Trustee's assumption provides a reliable basis for liability.

## ARGUMENT

Class Defendants object to the Trustee's proposal for claims allowance for the allowance reasons:

### A. As a Party in Interest, the Net Winners Should Have an Opportunity to Object to Claims of Ownership of Their User Accounts by Third Parties

The Class Representative objects to the opaque nature of the Trustee's proposed claim resolution process because it prevents Net Winners from exercising their right to object to claims under Bankruptcy Code Section 502(a) and Bankr. R. 3007. Section 502(a) of the Bankruptcy Code provides:

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C. § 502(a).

A "party in interest," a phrase undefined in the Bankruptcy Code, may object to a proof of claim. *Id.* Courts generally define that phrase as referring to one having a pecuniary interest in the case. *In re Blackstone Fin. Holdings, LLC*, 573 B.R. 1, 8 (Bankr.

6

D. Mass. 2017), citing, *Torres Martinez v. Rivera Arce* (*In re Torres Martinez*), 397 B.R. 158, 164 (1st Cir. B.A.P. 2008).

Here, the Net Winner Defendants are parties "in interest" under Bankruptcy Code § 502(a) because, at a minimum, they have a pecuniary interest in the outcome of the Trustee's determination of ownership of User Accounts. It is critical for the Net Winners to have an opportunity to review other participant claims so that they may refute any false claim of ownership over User Accounts that Net Winners claim as their own. Proper assignment of User Accounts is essential to the Net Winner Defendants because the aggregation of a "loser" user account to a Net Winner results in a dollar-for-dollar reduction in liability to the bankruptcy estate. Thus, the defendant Net Winners need to be able to challenge any other claimant of user accounts that they own. The Trustee has not proposed any mechanism to give the net winner defendants an opportunity to do so. At a minimum, Class Defendants should be able to inspect the Trustee's data to determine whether any of the User Accounts might belong to them. This would be feasible because the ePOC claims portal already made this type of information available to parties submitting proofs of claim. However, the positive or negative net value of each account was not shown. To the extent the Trustee has aggregated User Accounts belonging to a Net Winner to a third-party Net Loser, this has the effect of overstating the Net Winner's liability. For this reason, Class Defendants believe that access to User Account data, including whether or not one or more claimants is claiming ownership of User Accounts that actually belong to a Net Winner, is vital and necessary to determine liability. Class Defendants further believe that access to the information is feasible and

7

could be satisfactorily arranged if both sides were given the opportunity to discuss a procedure that will provide Net Winners with relevant claims data.

> B. **To the Extent that the Trustee Believes that Claimants Are also Net Winners, the Trustee's Omnibus Objection Should Provide Notice to Class Counsel and Allow those Claims to be Adjudicated in the Net Winner Adversary Proceeding on a Class-Wide Basis**

The Trustee asks this Court to allow him to make certain omnibus objections to participant claims, which would not otherwise be allowed by Bankr. R. 3007(d). These additional omnibus objections include, but are not limited to:

(i) Multiple Participants claimed ownership of one or more of the same User Accounts;

(ii) Participants deleted User Accounts associated with them by the Debtors' records without adequate explanation or documentation;

(iii) Participants added User Accounts that were not associated with them by the Debtors' records without adequate explanation or documentation;

(iv) Participants added or deleted a transaction or adjusted a transaction amount in a User Account without adequate explanation or documentation;

(v) Participants adjusted the amount of their claim based on transactions not consistent with the Net Equity formula, without adequate explanation or documentation;

(vi) Participants asserted claims in foreign currencies or asserted punitive claims or other claims that do not qualify for allowance under the Net Equity formulation approved by the Court; and

(vii) The claims are objectionable under Sections 502(d) of the Bankruptcy Code.

(Trustee's Motion, ¶ 57).

To the extent the Trustee asks for authority to include Net Winners in his omnibus objections as part of the claims allowance process, the Class Representatives object.

8

These objections are central to the actual issues being litigated in the adversary proceedings. For instance, ownership of User Accounts is essential to a Net Winner's potential reduction of liability to the bankruptcy estate. Modification and adjustment of the Trustee's record of transactions to reflect the actual realities of what occurred is also a defense that the Net Winners will use. The same reasoning applies to foreign currency issues and any class-wide claim offsets. If the Trustee is authorized to make omnibus objections against the Net Winners, then the Class Representatives should likewise be afforded an opportunity to respond on a class-wide basis. Further, individual Net Winner defendants should be permitted to litigate their proof of claim in the same proceeding that their liability is also being litigated.

   This is not just a theoretical concern. Class Defendants are aware that one or more alleged Net Winners have filed proofs of claim. There may be a variety of reasons why this happened, ranging from disputes as to ownership of User Accounts, to disputes as to actual sums of cash transferred (as opposed to relying on the Trustee's assumptions concerning cash transfers), all the way down to simple confusion or mistake. Regardless of the reason, in order to facilitate an orderly resolution of claims, the Class Defendants believe that the Trustee has an obligation to notify class counsel of any omnibus objection to claims filed by alleged Net Winners. This objection can then be litigated on a class-wide basis in the Adversary Proceeding. This will promote judicial economy and avoid the prospect of inconsistent adjudication.

    C.    **Any Individual Claim Objection Against an Individual Net Winner by the Trustee Should be Litigated in the Net Winner Adversary Proceeding as Part of an Individualized Damages Proceeding**

Regardless of whether there is an omnibus objection or not, if any suspected Net Winner has filed a claim, the Participant should receive notice from the Trustee and be given the opportunity to withdraw the claim. If the Participant does not withdraw the claim, the Participant should then be allowed to have the proof claim tried along with his or her liability in an individualized proceeding to determine damages. This will promote judicial economy and efficiency because the question of what accounts were truly owned by the Participant will be the same for both the adversary proceeding and the claims allowance process. There is also the risk of inconsistent adjudication, where a User Account might be determined to belong to a Participant in one proceeding and not the other. For this reason, there should not be a separate claims allowance process for Net Winners who, for whatever reason, have filed proofs of claim.

    D.    **Domestic Class Defendants Have Filed Class-Wide Proofs of Claims As Part of Their Defenses, and These Class-Wide Claims Should Be Carved Out of the Claims Allowance Process and Dealt with as Part of the Net Winner Adversary Proceedings**

Counsel for the domestic Net Winners filed three class-wide bankruptcy claims, through the Trustee's electronic claims portal. The first claim related to services performed by the Net Winner Defendants pursuant to the Massachusetts Wage Act, or other applicable state and federal laws (the "Wage Claim"). The Wage Claim generally asserts that the Adversary Proceeding is an effort by the Trustee to clawback commissions and non-discretionary bonuses earned by the Net Winners, violating various state and federal laws. The second claim filed by the Net Winner class alleges

that TelexFree misclassified the Net Winners as independent contractors when they should have been classified as employees (the "Misclassification Claim"). The third claim filed by the Net Winner class alleges that TelexFree owed the Net Winners credits, which were wrongfully taken from the Net Winners when their accounts were closed (the "Credit Claim").

These class-wide claims were not contemplated by the Trustee's online claim portal, nor do they fit within the claims allowance process proposed. Indeed, the Trustee does not even address these class-wide claims in his proposed procedures. Instead, these class-wide claims—in particular the Wage Claim and the Misclassification Claim—more squarely belong in the Net Winner Adversary Proceedings because they relate to Net Winner defenses. For these reasons, these class wide claims should be adjudicated in the domestic adversary proceeding.

    **E.**    **Class Defendants Believe that there Should not Be a Formal Claims Allowance Until Class Defendants' Expert, StoneTurn Group, Has Completed Its Review**

Fundamentally, it is impossible for claimants and Net Winners to fairly litigate net equity calculations without being given the chance to see and understand the underlying data and assumptions. In this regard, every party is at a disadvantage in comparison to the Trustee. To this end, Class Defendants have retained StoneTurn Group to evaluate the data and the Trustee's assumptions and determine whether either is faulty.

Class Defendants have concerns about agreeing to a claims allowance procedure before the expert opinions are fully developed. At this point, the Trustee's data has not

11

yet been tested by any outside party. Accordingly, this Court should not deem any claim to be "allowed" until the Net Winner Defendants have had an opportunity to review the Trustee's claims data, and comment further on the Trustee's method of aggregation and assumptions concerning cash transfers.

The validity of the Trustee's assumptions permeates nearly every contested issue in this case. For example, the Trustee makes several rote assumptions concerning ownership of accounts, including that each account is owned by one and only one person. But the Trustee's approach doesn't take into account all of the possible arrangements related to ownership of user accounts: some user accounts could have been owned by more than one individual, some user accounts could have been held by one party in trust for another participant, and some individuals may have temporarily or intermittently "borrowed" or "shared" accounts to harvest available credits. Discovery will reveal whether the Trustee's assumptions that User Accounts were unitary and atomistic is truly valid.

Similarly, the notion that Participants always exchanged cash in the exact amounts and at the exact times that invoices were paid using allegedly worthless credits is also problematic. All that was necessary to pay an invoice was credits—no real money needed to change hands. Simply put, the SIG system did not track cash. And yet the Trustee treats it as an accounting system that tracked cash. Class Defendants believe that expert discovery will show that the assumption that cash was reliably traced is unreliable.

For these reasons, Class Defendants believe that there should not be a formal claims allowance until class defendants' expert, StoneTurn Group, has completed its review. Otherwise there is a risk that determinations as to User Account ownership and net equity calculations will be made based on data and assumptions that are later determined to be unreliable.

## CONCLUSION

For the reasons set forth above, Frantz Balan, Marco Puzzarini, and Sandro Paulo Freitas, as Class Representatives of the domestic and international classes of defendants in Adversary Proceedings 14–4006 and 14–4007 hereby object on behalf of the respective Defendant Classes of Net Winners to the Motion by the Chapter 11 Trustee to Establish Omnibus Procedures for the Resolution of Disputed Participant Claims.

Respectfully Submitted,

MILLIGAN RONA DURAN & KING LLC

Dated: November 14, 2017

/s/ Ilyas J. Rona
Ilyas J. Rona, Esq. (BBO# 642964)
MILLIGAN RONA DURAN & KING, LLC
50 Congress Street, Suite 600
Boston, Massachusetts 02109
(617) 395-9570
ijr@mrdklaw.com