**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| In Re: ) | |
| ) | Chapter 11 |
| ) | |
| TELEXFREE, LLC , ) | Case No. 14-40987-MSH |
| TELEXFREE, INC., ) | Case No. 14-40988-MSH |
| TELEXFREE FINANCIAL, INC., ) | Case No. 14-40989-MSH |
| ) | |
| Debtors. ) | Jointly Administered |

**MOTION BY CHAPTER 11 TRUSTEE FOR AUTHORITY TO SELL REAL PROPERTY BY PUBLIC AUCTION SALE, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES (BEVERLY CONDOMINIUMS)**

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

Stephen B. Darr, the duly appointed Chapter 11 trustee (the "Trustee") of the bankruptcy estates (the "Estates") of TelexFree, LLC, TelexFree, Inc., and TelexFree Financial, Inc. (collectively, the "Debtors" or "TelexFree"), respectfully requests authority to sell by public auction sale ("Public Sale") all of the Estates' right, title, and interest in certain real property located at Units 102, 103, 201, 202, 301, 302, 304, and 402 of the Beverly Condominiums located at 900 NW 45th Street, Deerfield Beach Florida (the "Real Property"). The terms of the Public Sale are more particularly described below. In further support of this motion, the Trustee states as follows:

**Background**

1. On April 13, 2014 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") with the United States Bankruptcy Court for the District of Nevada.

1

2. The Debtors initially operated as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. On the Petition Date, the Debtors filed a motion for joint administration of the cases, with TelexFree, LLC designated as the lead case. By order dated April 24, 2014, the motion for joint administration was approved.

4. On May 6, 2014, the Court allowed the motion by the Securities and Exchange Commission ("SEC") to change the venue of the cases to the United States Bankruptcy Court for the District of Massachusetts (the "Court"). The cases were transferred to the Court on May 9, 2014.

5. On May 30, 2014, this Court allowed the motion by the Office of the United States Trustee to appoint a Chapter 11 trustee, and the Trustee was appointed on June 6, 2014.

6. On October 7, 2015, the Trustee filed his *Motion by Chapter 11 Trustee for Entry of Order Finding that Debtors Engaged in Ponzi and Pyramid Scheme and Related Relief* (the "Ponzi Motion"). By order dated November 25, 2015, as amended on December 21, 2015, the Court found the Debtors to have engaged in a Ponzi and pyramid scheme and that this finding was the law of the case.

7. On or about April 1, 2016, the Trustee commenced an action against a series of defendants, including Priscila Costa, asserting claims arising out of their involvement in the TelexFree program [A.P. No. 16-4032].

8. On or about February 13, 2019, the Trustee filed a motion to approve a settlement reached involving the Trustee, Costa and the SEC.

9. On or about March 25, 2019, the settlement was approved by the Court.

10. As part of the settlement, Costa conveyed any right, title, and interest she had in the Real Property to the Trustee. The Real Property, which consists of eight (8) residential condominium units located in a single complex in Florida, constitute assets of the bankruptcy Estates.

### RELIEF REQUESTED

11. Pursuant to Section 363 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002 and 6004, and Massachusetts Local Bankruptcy Rule 6004-1, the Trustee requests authorization to conduct a Public Sale of the Real Property free and clear of liens, claims, encumbrances, and interests. In connection therewith, the Trustee requests a finding that all purchasers thereof at the Public Sale are good faith purchasers.

12. Section 363(b)(1) of the Bankruptcy Code provides that an estate representative "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

13. Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course may be held by private sale or public auction.

14. The Real Property is to be sold in "as is" and "where is" condition. Further, the Trustee is not making any representations or warranties whatsoever, either express or implied, with respect to the Real Property.

### The Sale of the Real Property at Public Sale is in the Estates' Best Interest

15. The sale of the Real Property by Public Sale is the most efficient and effective means of administering the property. Because of the number of condominium units to be sold and because they are located within the same complex, the Trustee believes that the most likely purchaser for the units will be an individual investor for the entirety. Therefore,

an attempt to market and sell each unit by private sale would be time consuming, would result in increased carrying costs and administrative expenses, and would not likely yield a greater recovery.

16. Simultaneously herewith, the Trustee has filed an application to retain Fisher Auction Company ("Fisher") to assist in the marketing and public auction sale of the Real Property. The Trustee also intends to utilize Fisher to manage the condominium units pending sale.

17. Fisher will conduct the Public Sale at a physical location in the general proximity of the Real Property, at a site to be determined. Fisher will also permit bidding to take place online using a platform provided by Fisher without charge to bidders.

18. Fisher has established a comprehensive marketing plan for the Real Property, which includes print media, targeted mailings, and listings on various internet sites.

19. Fisher intends to advertise the auction widely in newspapers, specialty publications, by first-class mail, electronic mail, and on the Internet. Fisher will also mail electronically and otherwise notices of the Public Sale to parties identified in its own database as potential bidders for the Real Property.

20. The Public Sale is scheduled to occur approximately sixty (60) days after Court approval of this motion on the terms and conditions set forth in this motion and in the proposed *Notice of Intended Public Auction* (the "Notice") attached hereto as Exhibit A. The Notice includes as an attachment detailed General Terms and Conditions of Sale.

21. Should the high bidder for the Real Property fail to close on the sale, the Trustee seeks authority to sell such Real Property to the next highest bidder without further Court approval.

22. The sale of the Real Property by the Public Sale will likely enable the Trustee to obtain the highest and best offer for the Real Property, and approval of the Public Sale according to the foregoing terms is therefore warranted.

### **Sale of Real Property Free and Clear of Liens Claims Interests and Encumbrances**

23. Pursuant to Section 363(f) of the Bankruptcy Code, the Trustee seeks to sell the Real Property free and clear of all liens, claims, interests, and encumbrances at the Public Sale. Any and all such liens, claims, interests and encumbrances shall attach to the proceeds of the Public Sale, with the same validity, priority and enforceability as existed on the Real Property prior to the Public Sale.

24. Pursuant to Section 363(f) of the Bankruptcy Code, an estate may sell property free and clear of liens, claims and encumbrances if one of the following conditions is satisfied:

   a. Applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

   b. the lienholder or claimholder consents;

   c. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

   d. such interest is in bona fide dispute; or

   e. the lienholder or claimholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest

25. Upon information and belief, the Real Property is unencumbered, except for accrued and unpaid homeowner association charges in an undetermined amount, and accrued and unpaid real estate taxes estimated to be in the approximate amount of $30,000.

26. After payment of the homeowner association charges, municipal liens, and closing costs, the Trustee anticipates that the sale will generate a substantial recovery for the Estates.

27. Based upon the foregoing, the Trustee requests, pursuant to Section 363(f) of the Bankruptcy Code, that the Real Property be sold free and clear of any and all liens, claims, and interests, with such liens, claims, and interests attaching to the net proceeds of the sale with the same validity, priority and enforceability as existed prior to the sale. Nothing herein shall be deemed to be an acknowledgment by the Trustee as to the validity priority or enforceability of any asserted liens, claims, or interests.

### Good Faith Protections under Section 363(m)

28. Because the Public Sale will effectuate a transfer of the Real Property following a public and transparent sale process, purchasers of the Real Property are entitled to the protections of Section 363(m) of the Bankruptcy Code which provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b)…of this section of a sale…of property does not affect the validity of a sale …under such authorization to an entity that purchased…such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale…were stayed pending appeal.

11. U.S.C. § 363(m).

29. Courts have defined a "good faith purchaser" as "one who buys property in good faith and for value, without knowledge of adverse claims." *In re Mark Bell Furniture Warehouse, Inc.,* 992 F.2d 7, 8 (1st Cir. 1993). "Good faith" is a lack of "fraud, collusion…or an attempt to take grossly unfair advantage of other bidders." *Id. citing In re Andy Frain Servs., Inc.*, 798 F.2d 1113, 1125 (7th Cir. 1986). Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an

6

actor's] conduct during the sale proceedings." *In re Tri-Cran, Inc.*, 98 B.R. 609, 618 (Bankr. D. Mass. 1989) *quoting Rock Indus. Machinery Corp.*, 572 F.2d at 1198 (7th Cir. 1978).

30. The proposed Public Sale is subject to a formal and transparent marketing and sale process during which the Real Property will be made available to any prospective purchaser and widely advertised to attract the most bidders possible prior to a public auction sale. All parties with an interest in the Real Property, and as required by Bankruptcy Rule 2002, will receive notice of the Sale and will be provided an opportunity to be heard prior to the proposed sale. The Trustee submits that such notice is adequate and satisfies the requisite notice provisions required under section 363(b) of the Bankruptcy Code. Under the circumstances, the purchasers of the Real Property should be afforded the benefits and protections that Section 363(m) of the Bankruptcy Code provides.

### VIII. Notice

31. The Trustee has filed a form of proposed Notice of Intended Private Sale ("Notice") providing for the terms of sale, sale procedures, and other relevant information. The Trustee believes that the Notice provides necessary information respecting the sale and the means for obtaining additional information.

32. A copy of the Notice will be served on the top thirty largest unsecured creditors listed on the Schedules, parties having filed notices of appearances, and governmental authorities. Additionally, the Trustee shall serve the Notice on all parties having previously expressed an interest in acquiring the Real Property. The Trustee submits that, given the size of the creditor matrix in these cases, no further notice should be necessary or required.

33. Additional information respecting the terms of the sale is disclosed in the proposed Notice.

### IX. Distribution of Sale Proceeds

34. By this motion, the Trustee requests authority to pay all costs of sale including taxes, homeowner association charges, and customary closing costs.

**WHEREFORE,** the Trustee respectfully requests that this Court enter an Order:

(A) Pursuant to 11 U.S.C. § 363, authorizing the Trustee to sell the Estates' interest in the Real Property by Public Sale subject to the terms and conditions set forth herein, free and clear of liens, claims, encumbrances and interest, with such liens, claims, encumbrances, and interests to attach to the proceeds of the sale to the extent of their validity, perfection and priority;

(B) Approving the form of the proposed Notice;

(C) Approving the sale of the Real Property to the next highest bidder, if the sale is not completed by the highest bidder;

(D) Determining the high bidder to be a good faith purchaser(s) for value pursuant to Section 363(m) of the Bankruptcy Code;

(E) Authorizing the Trustee to pay any ordinary and usual closing costs associated with the sale of the Real Property, with such costs to be paid from the net proceeds of the sale;

(F) Waiving the automatic stay provisions of Fed. R. Bankr. P. 6004(h) with respect to the Private Sale; and

(G) Granting such other and further relief as this Court deems just and proper.

                    STEPHEN B. DARR,
                    CHAPTER 11 TRUSTEE,
                    By his attorneys,

                    */s/ Andrew G. Lizotte*
                    Andrew G. Lizotte (BBO #559609)
                    Murphy & King, Professional Corporation
                    One Beacon Street
                    Boston, MA  02108
                    Telephone:  (617) 423-0400
                    Facsimile:  (617) 423-0498
                    Email: ALizotte@murphyking.com

Dated:  April 17, 2019
756045

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|   |   |   |
|---|---|---|
| In Re: | ) ) ) ) ) ) ) ) ) ) | Chapter 11 |
| TELEXFREE, LLC , TELEXFREE, INC., TELEXFREE FINANCIAL, INC., | | Case No. 14-40987-MSH Case No. 14-40988-MSH Case No. 14-40989-MSH |
| Debtors. | | Jointly Administered |

**NOTICE OF INTENDED PUBLIC AUCTION OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, DEADLINE FOR OBJECTIONS, AND DATE OF HEARING ON MOTION TO SELL**

Notice is hereby given pursuant to Sections 363 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 2002 and 6004 and Massachusetts Local Bankruptcy Rule 6004-1 and the *Motion by Trustee to Sell Real Property by Public Auction Free and Clear of Liens, Claims, Encumbrances and Interests* (the "Motion"), that Stephen B. Darr, the duly appointed Chapter 11 trustee (the "Trustee") of the bankruptcy estates (the "Estates") of TelexFree, LLC, TelexFree, Inc., and TelexFree Financial, Inc. (collectively, the "Debtors" or "TelexFree"), intends to sell, transfer and convey by public auction sale (the "Public Sale") all of the Estates' right, title and interest in certain real property located at Units 102, 103, 201, 202, 301, 302, 304, and 402 of the Beverly Condominiums located at 900 NW 45th Street, Deerfield Beach, Florida (the "Real Property").

**THE REAL PROPERTY SHALL BE SOLD FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS**

The sale of the Real Property shall be free of all liens, claims, encumbrances and interests with such liens, claims, encumbrances and interests attaching to the proceeds of the sale with the same validity, priority, and perfection as existed prior to the sale.

### DATE AND TERMS OF AUCTION OF REAL PROPERTY

**A hearing on the Motion is scheduled for _____, 2019 at \_\_:\_\_ A.M. before the Honorable Melvin S. Hoffman, United States Bankruptcy Court, District of Massachusetts, United States Courthouse, John W. McCormack Courthouse, 5 Post Office Square, Boston, Massachusetts.** Copies of the Motion may be obtained from the undersigned counsel to the Trustee.

**Any objections to the Public Sale must be filed on or before _____, 2019 at 4:30 P.M.** via the Court's CM/ECF system or with the Clerk, United States Bankruptcy Court, United States Bankruptcy Court, District of Massachusetts, United States Courthouse, 5 Post Office Square, Boston, Massachusetts 02109. Any objection must state specifically why the Public Sale should not be authorized. Unless a timely objection is filed, a hearing may not be held and the Public Sale will take place as scheduled. Copies of any objection should be served on counsel to the Trustee, Andrew Lizotte, Murphy & King, Professional Corporation, One Beacon Street, Boston, Massachusetts 02108.

**The Public Sale will be conducted at a date and time after Court approval of the Motion. A separate notice will be issued when the date, time, and place of the Public Sale has been finalized. The Public Sale will be conducted in person and through an internet platform operated by the Trustee's auctioneer pursuant to the terms set forth in the attached General Terms and Conditions of Sale.**

You may obtain additional information regarding the Public Sale by contacting the undersigned or by inspecting the auctioneer's website at fisherauction.com.

                                    STEPHEN B. DARR,
                                    CHAPTER 11 TRUSTEE,
                                    By his attorneys,

                                    _____
                                    Andrew G. Lizotte (BBO #559609)
                                    Murphy & King, Professional Corporation
                                    One Beacon Street
                                    Boston, MA  02108
                                    Telephone:  (617) 423-0400
                                    Facsimile:  (617) 423-0498
                                    Email: ALizotte@murphyking.com

Dated: April \_\_, 2019
756046

2

**EXHIBIT A**

**GENERAL TERMS AND CONDITIONS OF SALE**

Real Estate Auction
By Order of the United States Bankruptcy Court
District of Massachusetts
**Stephen Darr, Trustee • RE: TelexFree, LLC et al, Case No. 14-40987**
<mark>(Auction Date and Time to be Provided)</mark>
**Property: Eight (8) Condominiums within "Beverly Condominiums"**
900 N.W. 45th Street, Units 101, 103, 201, 202, 301, 302, 304, 402, Deerfield Beach, FL 33064
(To be Sold as "One Unit of Sale")

**Please review this document carefully. In order to register to become a Qualified Bidder and receive a Bidder's Number at the Auction, a Bidder must sign their Acknowledgment and Acceptance of these General Terms and Conditions of Sale, which may be incorporated into the Real Estate Sales Contract.**

**1. AUCTION DARW, TIME AND PLACE:**
The live open out-cry Auction ("Auction") shall be held (<mark>Day and Date to be provided</mark>) at (<mark>Auction Location Address</mark>). The Auction will commence at approximately 11:00 AM EDT.

**2. BIDDER REGISTRATION:**
Bidder Registration will begin one hour prior to the Auction date and time. Registration is required to become a qualified and eligible bidder ("Bidder") at the Auction. To register, a prospective Bidder must:
(a) Provide Bidder's full name, company name, residence/business addresses with telephone numbers, cellular telephone number, facsimile number, email address, a State valid driver's license number or a valid passport and the name(s) and / or entity in which the Bidder will take title to the Property.
**(b) Present (for review) at registration a Cashier's Check or Certified Funds (no exceptions) payable in U.S. Funds to (Stephen Darr, Trustee) in the amount of $25,000.00. If desired, Bidders may wire transfer said deposit prior to the Auction date. (Contact Fisher Auction Company for wiring instructions 800.331.6620 or 954.942.0917 for international calls). Wired deposit must be verified by the Trustee as being received by the Trustee prior to the commencement of the Auction.**
(c) Sign an acknowledgment that the Bidder has read and agrees to be bound by these General Terms and Conditions of Sale.

**3. HIGHEST BIDDER, IMMEDIATE BACK UP BIDDER, PURCHASE PRICE, ESCROW DEPOSITS, REAL ESTATE SALES CONTRACT:**
(a) The highest Bidder shall be required to execute, as Buyer ("Buyer"), the Real Estate Sales Contract ("Contract") at their bid price, which has been previously furnished to Bidder, immediately following the bidding and / or no later than the conclusion of the Auction, with no changes / exceptions, and tender the escrow deposits so required. The highest Bidder's deposit stated in 2 (b) above shall be delivered to Stephen Darr, Trustee, ("Initial Escrow Deposit") for deposit into his Trust Account and held in escrow as a required escrow deposit pursuant to the terms of the Contract.
(b) An additional deposit ("Additional Escrow Deposit") equal to the difference between 10% of the Purchase Price and the Initial Deposit, will also be due immediately following the bidding and / or no later than the conclusion of the Auction in the form of a personal or business check from a U.S. Bank payable to Stephen Darr, Trustee, and shall be delivered to Stephen Darr, Trustee, for deposit into his Trust Account and held in escrow as a required deposit pursuant to the terms of the Contract.
(c) The Immediate Back Up Bidder shall be required to execute the Real Estate Sales Contract at their bid price immediately following the bidding and / or no later than the conclusion of the Auction, with no changes / exceptions, and tender the $25,000.00 Initial Escrow Deposit which shall be delivered to Stephen Darr, Trustee for deposit into his Trust Account and held as a required escrow deposit pursuant to the terms of the Contract. If the Highest Bidder defaults on their purchase, the Immediate Back-up Bidder shall be required to close on their transaction within fifteen (15) calendar days from the Highest Bidder's default date. The Immediate Back-up



Bidder's Initial Escrow Deposit shall be returned to him within three (3) business days from the closing with the Highest Bidder.

**4. CLOSING AND PAYMENT OF PURCHASE PRICE:**
(a) The Closing ("Closing") shall be on or before fifteen (15) calendar days from the Trustee approving the sale; provided however that Stephen Darr, Trustee (the "Seller") shall have the right to extend the Closing by up to an additional thirty (30) calendar days by giving written notice to the Buyer.
(b) The Purchase Price will be due and payable by Buyer at Closing by Wire Transfer of immediate funds. Buyer shall receive credit for the Initial Deposit and the Additional Deposit, upon clearance, which shall be released from escrow and applied by the Settlement Agent towards the Purchase Price at Closing.
(c) Time shall be of the essence as to Buyer's obligations in these General Terms and Conditions and as described in the Contract.

**5.  TITLE INSURANCE and ZONING:**
(a) It is understood and agreed that fee simple title to the property being sold to the Buyer (the "Property"), free and clear of liens at time of closing, will be conveyed to the Buyer by a Trustee's and or Quit Claim Deed (the "Deed") with no representations or warranties of any kind whatsoever, express or implied. The acceptance of the Deed by Buyer shall constitute and be deemed and considered full compliance by Seller of all the terms and conditions of the Contract on the part of Seller to be performed. It is further expressly agreed that none of the provisions of the Contract shall survive the delivery and acceptance of the Deed, except insofar as may herein otherwise be expressly and specifically provided.
(b) Buyer agrees that the Property is subject to all laws, ordinances, codes, rules and regulations of applicable governmental authorities pertaining to the ownership, use and occupancy of the Property including, but not limited to, zoning, land use, building codes, and agrees to take title subject to such matters, and the following permitted exceptions: (i) all covenants, restrictions, easements and agreements of record now on the Property; (ii) all liens for unpaid municipal charges not yet due and payable and all taxes and assessments for the year of Closing and all subsequent years not yet due and payable; (iii) any matter created by or through Buyer; (iv) any title matters which Buyer has accepted or is deemed to have accepted as set forth in the Contract; (v) and such other items that will not make the Property unusable or unmarketable for the purposes for which it is currently used.
(c) Seller is not providing any title insurance commitment or title insurance policy to Buyer.

**6.  BUYER'S NOTE:**
(a) The sale of the Property is an "All Cash" transaction and shall not be subject to any financing, title review, other contingencies, or post Auction due diligence.
(b) The Seller and Fisher Auction Company, their representatives, attorneys, agents, and sub-agents, assume no liability for errors or omissions in this or any other property listing or advertising or promotional/publicity statements and material. The Seller and Fisher Auction Company, their representatives, attorneys, agents and sub-agents, make no guarantee as to the accuracy of the information herein contained or in any other property listing or advertising or promotional/publicity statements and material. Neither Fisher Auction Company nor the Seller has any obligation to update this information. Neither Fisher Auction Company nor the Seller, their Agents and Sub-Agents, have any liability whatsoever for any oral or written representations, warranties, or agreements relating to the Property (including information appearing in this Agreement or announcements at the time of the Auction) except as is expressly set forth in the Contract.
(c) The Property is sold in its "AS IS AND WHERE IS" condition and with all faults and defects, with no representations or warranties, express or implied. All Bidder are encouraged to inspect the Property prior to placing any bid at the Auction and the Highest Bidder, as Buyer, acknowledges that it has had a reasonable opportunity to inspect and examine the condition of the Property and make inquiries of applicable governmental authorities pertaining to Buyer's proposed use of the Property prior to the Auction as Buyer has deemed necessary or desirable. Please review the Contract, the As-Is Rider and the Disclosures attached to the Contract.



(d) Competitive bidding is an essential element of an Auction sale, and such a sale should be conducted fairly and openly with full and free opportunity for competition among bidders. Any conduct, artifice, agreement, or combination the purpose and effect of which is to stifle fair competition and chill the bidding, is against public policy and will cause the sale to be set aside. Collusion / Bid Rigging is a Federal Felony punishable by imprisonment and fine. Fisher Auction Company will report all illegal conduct to the Bankruptcy Court, the office of the United States Trustee and/or the F.B.I. and cooperate with any prosecution.

(e) The Property may be withdrawn from the Auction at any time without notice.

(f) Seller, in its absolute sole discretion, reserves the right to amend, negotiate, modify, or add any terms and conditions to these General Terms and Conditions of Sale, the Contract and to announce such amendments, modifications, or additional terms and conditions at anytime.

(g) Back-up bids will be recorded and received by Seller in Seller's absolute discretion. Should the Property not close with the Buyer, the Seller will have the option to pursue back-up bids.

(h) If you are unsure about anything regarding the Property, do not place a bid. Review of the Contract before making any bids is strongly recommended.

(i) A Buyer's Broker shall be compensated from their respective Buyer. Seller shall not be responsible for any buyer broker commissions.

## 7. ANNOUNCEMENTS:

All announcements from the Auction Block at the Auction will take precedence over all previously printed material and any other oral statements made; provided however that the Auctioneer shall not be authorized to may any representation or warranty (express or implied) with respect to the Property. In the event of a dispute over any matter, the Auctioneer shall make the sole and final decision and will have the right either to accept or reject the final bid or re-open the bidding. Bidding increments shall be at the sole discretion of the Auctioneer.

## 8. DEFAULT:

If the Buyer fails to comply with any of these General Terms and Conditions of Sale, the Seller shall retain the required Escrow Deposit(s), which shall be considered fully earned and non-refundable, under this Agreement and / or the Contract as liquidated damages and not as a penalty. Upon Default, Buyer agrees to the immediate release of the Escrow Deposit funds to the Seller without the requirement of further documentation from Buyer.

## 9. REPRESENTATIONS:

All information was derived from sources believed to be correct, but is not guaranteed. Bidder shall rely entirely on their own information, judgment, and inspection of the Property and records. Neither Seller or Fisher Auction Company, it's Agents and Sub-Agents makes any representation or warranties as to the accuracy or completeness of any information provided. All sizes, dimensions, drawings are approximations only.

## 10. ONLINE BIDDING AVAILABLE:

Online bidding will be provided to pre-qualified bidders. Please contact Fisher Auction Company for details and pre-qualifying instructions.

## 11. BID PRICE:

The bid price for the Property shall be determined by competitive bidding at the live open out-cry Auction. The Property will be sold to the Highest Bidder subject to the final approval by the Trustee.

## 12. ACKNOWLEDGMENT AND ACCEPTANCE:

The Undersigned Bidder acknowledges receipt of a copy of these General Terms and Conditions of Sale, and having read and understood the provisions set forth therein, accepts same and agrees to be bound thereby. Facsimile or electronic signatures will be treated and considered as original.

## 13. GOVERNING LAW:

This Agreement shall be construed in accordance with and governed by the laws of the State of Florida and the laws of the United States pertaining to transactions in Florida. THE BUYER AND SELLER AGREE THAT THE BANKRUPTCY COURT SHALL HAVE THE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (i) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT EXECUTED PURSUANT HERETO; (ii) THE CLOSING HEREUNDER; OR (iii) THE PROPERTY.



**14.    ENTIRE AGREEMENT:**

This Agreement embodies the entire agreement between the parties relative to the subject matter, and there are no oral or written agreements between the parties, or any representations made by either party relative to the subject matter, which are not expressly set forth herein. To the extent that any of the terms or provisions contained herein differs or conflicts with those contained within the Contract, the Contract shall control.

_____    _____    _____    _____
Bidder's #          Bidder's Signature                                       Date                Time

