## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In Re: ) | |
| ) | **Chapter 11** |
| ) | |
| **TELEXFREE, LLC ,** ) | **Case No. 14-40987-MSH** |
| **TELEXFREE, INC.,** ) | **Case No. 14-40988-MSH** |
| **TELEXFREE FINANCIAL, INC.,** ) | **Case No. 14-40989-MSH** |
| ) | |
| **Debtors.** ) | **Jointly Administered** |
| ) | |

## MOTION BY CHAPTER 11 TRUSTEE FOR AUTHORITY TO SELL REAL PROPERTY BY PRIVATE SALE, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES
### (COCONUT CREEK, FLORIDA)

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

Stephen B. Darr, the duly appointed Chapter 11 trustee (the "Trustee") of the bankruptcy estates (the "Estates") of TelexFree, LLC, TelexFree, Inc., and TelexFree Financial, Inc. (collectively, the "Debtors" or "TelexFree"), respectfully requests authority to sell by private sale ("Private Sale") all of the Estates' right, title, and interest in certain real property located at 4506 San Mellina Drive, Coconut Creek, Florida ("Real Property") to Gary A. Anderson, or his nominee ("Purchaser") for the sum of $480,000.00 ("Purchase Price").  The terms of the Private Sale are more particularly described below, and are set forth in their entirety in the Purchase and Sale Agreement (the "Sale Agreement") attached as Exhibit A.[1]   In further support of this motion, the Trustee states as follows:

---

[1] To the extent of any inconsistency between this motion and the Sale Agreement, the terms of the Sale Agreement shall govern.

## Background

1.      On April 13, 2014 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") with the United States Bankruptcy Court for the District of Nevada.

2.      The Debtors initially operated as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.      On the Petition Date, the Debtors filed a motion for joint administration of the cases, with TelexFree, LLC designated as the lead case.  By order dated April 24, 2014, the motion for joint administration was approved.

4.      On May 6, 2014, the Court allowed the motion by the Securities and Exchange Commission to change the venue of the cases to the United States Bankruptcy Court for the District of Massachusetts (the "Court").  The cases were transferred to the Court on May 9, 2014.

5.      On May 30, 2014, this Court allowed the motion by the Office of the United States Trustee's to appoint a Chapter 11 trustee, and the Trustee was appointed on June 6, 2014.

6.      On October 7, 2015, the Trustee filed his *Motion by Chapter 11 Trustee for Entry of Order Finding that Debtors Engaged in Ponzi and Pyramid Scheme and Related Relief* (the "Ponzi Motion").  By order dated November 25, 2015, as amended on December 21, 2015, the Court found the Debtors to have engaged in a Ponzi and pyramid scheme and that this finding was the law of the case.

7.      The Trustee thereafter commenced a series of actions against defendants on account of their involvement in the TelexFree scheme. As a result of a settlement with one such defendant, the Trustee was conveyed title to the Real Property.

8. On or about February 13, 2019, the Trustee filed an application to retain Fisher Auction Company to assist in the marketing and sale of the Real Property, which application was approved by order dated March 5, 2019.

9. The Trustee has solicited purchasers for the Estates' interest in the Real Property.

## II. Terms of Private Sale

10. Pursuant to this Motion, the Trustee seeks Court approval to sell all of the Estates' right, title, and interest in and to the Real Property to the Purchaser or their nominee.

11. The deed to the Purchaser shall convey title to the Real Property, free and clear of any liens, claims, encumbrances and interests including any and all right, title and interest in Homestead that the defendant or defendant's spouse may have had in the Real Property, and excepting those limited items set forth in the Sale Agreement.

12. In accordance with the terms of the Sale Agreement, the Purchaser shall pay to the Trustee on the closing date, which is to occur five days after Bankruptcy Court approval but no earlier than June 14, 2019 (the "Closing Date"), the Purchase Price for the Real Property, in the amount of $480,000.00, payable as follows:

(i) $10,000.00 paid as a deposit in connection with the execution of the Sale Agreement; and

(ii) $384,000.00 in conventional financing; and

(iii) $86,000.00 at the time of delivery of the deed.

13. The sale is subject to a financing contingency. The Purchaser received conditional loan approval on May 30, 2019 subject to conditions that can be reasonably met by the Purchaser. Purchaser's financing contingency is set to expire on June 13, 2019.

14.    The Purchaser shall receive a $5,000.00 closing cost credit, deducted from the

sale proceeds due to the Estates on the Closing Date to be applied towards Purchaser's

closing costs, pre-paids and escrows.

15.    Pursuant to the Sale Agreement, the Real Property is to be sold in "as is" and

"where is" condition. Further, the Trustee is not making any representations or warranties

whatsoever, either express or implied, with respect to the Real Property.

### III.  Liens and Interests Encumbering the Real Property

16.    Pursuant to Section 363 of the Bankruptcy Code, the Trustee requests authority to

sell the Estates' interest in the Real Property free and clear of all liens, claims, interests, and

encumbrances whatsoever, including any interest in Homestead, known and unknown, including

without limitation liens, claims, interests, and encumbrances held by any of the Debtors'

creditors.  Any and all liens, claims, encumbrances, and interests shall attach to the proceeds

subject to subsequent determination regarding the validity, priority, and extent of such rights.

17.    Upon information and belief, the Real Property is unencumbered, except for

accrued and unpaid homeowner association charges in a nonmaterial amount, and accrued and

unpaid real estate taxes estimated to be in the approximate amount of $25,000.

18.    After payment of the homeowner association charges, municipal liens, and

closing costs, the Trustee anticipates that the sale will generate a substantial recovery for the

Estates.

### IV.  Approval of the Sale of the Real Property is in the Best Interest of the Bankruptcy Estate

19.    This Court should approve the Private Sale of the Real Property on the terms and

conditions as set forth in the Sale Agreement.   The terms of the Sale Agreement are fair and

reasonable, and the Trustee believes that a sale of the Real Property through the Private Sale

will yield the maximum value.

20.    The Private Sale was negotiated at arm's length between the Trustee, including

his real estate broker, and the Purchaser.   The Real Property has been marketed and the offer

represents the highest offer obtained.

21.     The Trustee has the authority to convey the Estates' interest in the Real Property

to the Purchaser free and clear of liens, claims, and encumbrances.

## V. Counteroffers and Bidding Procedures

22.    Approval of the Private Sale is subject to the submission of counteroffers. Any

and all counteroffers must be in an amount not less than five percent (5%) greater than the

Purchase Price, or $504,000.00.

23.    All counteroffers must be accompanied by a deposit equal to $50,000 ("Deposit")

in the form of a certified or bank check, or cash, and made payable to the Trustee.

Counteroffers must include an executed purchase and sale agreement upon terms substantially

consistent with the terms of the Sale Agreement.  Counteroffers shall not be subject to further

due diligence and may not contain any other conditions precedent to the consummation of the

sale other than those provided in the Sale Agreement.

24.    In the event of a timely counteroffer, each interested bidder shall have an

opportunity to submit an additional sealed bid for the Real Property at the hearing on the sale

before the Bankruptcy Court.

25.    The Trustee requests that the Deposit submitted by the highest bidder be forfeited

to the Estates if the highest bidder fails to complete the sale by the date ordered by the Court.

26.     The Trustee further requests that, if the sale of the Real Property is not completed by the highest bidder, the Court authorize the sale of the Real Property to the next highest bidder.

## VI.  Waiver of Provisions of Fed. R. Bankr. P. 6004

27.     The Trustee requests that the Court waive the automatic stay provisions of Fed. R. Bankr. P. 6004(h) with respect to the Private Sale, as the Purchaser has pre-approval of his financing and is otherwise motivated to close the transaction.

## VII.  Notice

28.     The Trustee has filed a form of proposed Notice of Intended Private Sale ("Notice") providing for the terms of sale, sale procedures, and other relevant information. The Trustee believes that the Notice provides necessary information respecting the sale and the means for obtaining additional information. The Notice is attached as Exhibit "B".

29.     A copy of the Notice will be served on the top thirty largest unsecured creditors listed on the Schedules, parties having filed notices of appearances, and governmental authorities.  Additionally, the Trustee shall serve the Notice on all parties having previously expressed an interest in acquiring the Real Property.  The Trustee submits that, given the amount of the sale price, and the size of the creditor matrix in these cases, no further notice should be necessary or required.

30.     Additional information respecting the terms of the sale, objection and counteroffer procedures, is disclosed in the proposed Notice.

## VIII.  Distribution of Sale Proceeds

31.     By this motion, the Trustee requests authority to pay all costs of sale including broker's commission, taxes, homeowner association charges, recording fees, the $5,000.00 closing cost credit to the Purchaser and customary closing costs.

**WHEREFORE,** the Trustee respectfully requests that this Court enter an Order:

(A)    Pursuant to 11 U.S.C. § 363, authorizing the Trustee to sell the Estates' interest in the Real Property to the Purchaser subject to the terms and conditions set forth in the Sale Agreement, free and clear of liens, claims, encumbrances and interest, including any interest in Homestead, with such liens, claims, encumbrances, and interests to attach to the proceeds of the sale to the extent of their validity, perfection and priority;

(B)    Approving the form of the proposed Notice;

(C)    Approving the sale of the Real Property to the next highest bidder, if the sale is not completed by the highest bidder;

(D)    Authorizing the Trustee to pay any ordinary and usual closing costs associated with the sale of the Real Property, with such costs to be paid from the net proceeds of the sale, including the $5,000.00 closing cost credit;

(E)    Waiving the automatic stay provisions of Fed. R. Bankr. P. 6004(h) with respect to the Private Sale; and

(F)    Granting such other and further relief as this Court deems just and proper.

STEPHEN B. DARR,
CHAPTER 11 TRUSTEE,
By his attorneys,

*/s/ Andrew G. Lizotte*
Andrew G. Lizotte (BBO #559609)
Murphy & King, Professional Corporation
One Beacon Street
Boston, MA  02108
Telephone:  (617) 423-0400
Facsimile:  (617) 423-0498
Email: ALizotte@murphyking.com

Dated:  June 11, 2019
759343

**EXHIBIT A**

Authentisign ID: 5ADC2D6A-92FA-4CF3-BA66-D4E128AA27C8

## "AS IS" Residential Contract For Sale And Purchase

THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

**FloridaRealtors®**

1* **PARTIES:** Stephen Darr, as Trustee of THE CHAPTER 11 ESTATES OF TELEXFREE, LLC, TELEXFREE, INC. AND
2* TELEXFREE FINANCIAL, INC ("Seller"),
3 and                                    Gary A. Anderson                                    ("Buyer"),
4 agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
5 (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And
6 Purchase and any riders and addenda ("Contract"):
7* **1. PROPERTY DESCRIPTION:**
8* (a) Street address, city, zip:         4506 San Mellina Drive, Coconut Creek, FL 33073
9* (b) Located in: Broward County, Florida. Property Tax ID #: 484217100010
10 (c) Real Property: The legal description is: San Mellina 176-44 B Lot 1
11 together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
12 attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
13 by other terms of this Contract.
14 (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
15 which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
16 purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s),
17 drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security
18 gate and other access devices, and storm shutters/panels ("Personal Property").
19 Other Personal Property items included in this purchase are: Microwave; range – electric; wall oven; water
20* heater – electric
21 Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
22 (e) The following items are excluded from the purchase: _____
23*
24

25                          **PURCHASE PRICE AND CLOSING**

26* **2. PURCHASE PRICE (U.S. currency):**............................................................................. $         480,000.00

27* (a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** ....... $         5,000.00
28 The initial deposit made payable and delivered to "Escrow Agent" named below
29* **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☒ is to be made within ___3___ (if left
30 blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
31 OPTION (ii) SHALL BE DEEMED SELECTED.
32* Escrow Agent Information: Name: The Seller per the terms of the Rider A.
33* Address:
34* Phone:            E-mail:            Fax:
35* (b) Additional deposit to be delivered to Escrow Agent within ___11_____ (if left blank, then 10)
36* days after Effective Date .................................................................................... $5,000.00
37 (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38* (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ........ $384,000.00
39* (d) Other: _____ upon satisfactory
40 inspection_____ ................ $ _____
41* (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire      $
42 transfer or other COLLECTED funds ............................................................. 86,000.00
43 NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.
44 **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
45* (a) If not signed by Buyer      and Seller, and an executed copy delivered to all parties on or before
46 May 13, 2019      , this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
47 Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
48 the counter-offer is delivered.
49 (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
50 initialed and delivered this offer or final counter-offer ("Effective Date").
51 **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
52* and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
        5 days after
        Bankruptcy Court
        approval but no earlier
("Closing") on _____ than June 14, 2019 _____ ("Closing Date"), at the time established by the Closing Agent.

Page •                                    Seller's initials _____

Authentisign ID: 5ADC2D6A-92FA-4CF3-BA66-D4E128AA27C8

**5. EXTENSION OF CLOSING DATE:**
(a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due
to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"),
then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such
period shall not exceed 10 days.
(b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the
unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be
extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**
(a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the
Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed
all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices
and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of
loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date,
and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.
(b) ☐ CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING. If Property is
subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the
facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall
be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that
the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery
of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer
shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract.
Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to
be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under
this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign this
Contract.

**FINANCING**

**8. FINANCING:**
☐ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's
obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges
that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend
the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.
☒ (b) This Contract is contingent upon Buyer obtaining approval of a ☒     conventional FHA VA or other
_____ (describe) loan within _____30____ (if left blank, then 30) days after Effective Date ("Loan Approval
Period") for **(CHECK ONE):** ☒ fixed ☐ adjustable, fixed or adjustable rate in the Loan Amount (See Paragraph
2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's
creditworthiness), and for a term of _____ (if left blank, then 30) years ("Financing").
(i) Buyer shall make mortgage loan application for the Financing within __7___ (if left blank, then 5) days
after Effective Date and use good faith and diligent effort to obtain approval of a loan meeting the Financing terms
("Loan Approval") and thereafter to close this Contract. Loan Approval which requires a condition related to the sale
by Buyer of other property shall not be deemed Loan Approval for purposes of this subparagraph.

Buyer's failure to use diligent effort to obtain Loan Approval during the Loan Approval Period shall be considered
a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes, but is not
limited to, timely furnishing all documents and information and paying of all fees and charges requested by
Buyer's mortgage broker and lender in connection with Buyer's mortgage loan application.

(ii) Buyer shall keep Seller and Broker fully informed about the status of Buyer's mortgage loan application,
Loan Approval, and loan processing and authorizes Buyer's mortgage broker, lender, and Closing Agent to
disclose such status and progress, and release preliminary and finally executed closing disclosures and
settlement statements, to Seller and Broker.
(iii) Upon Buyer obtaining Loan Approval, Buyer shall promptly deliver written notice of such approval to Seller.
(iv) If Buyer is unable to obtain Loan Approval after the exercise of diligent effort, then at any time prior to
expiration of the Loan Approval Period, Buyer may provide written notice to Seller stating that Buyer has been
unable to obtain Loan Approval and has elected to either:
(1) waive Loan Approval, in which event this Contract will continue as if Loan Approval had been obtained; or
(2) terminate this Contract.

Buyer's Initials _____   Page 2 of 12   Seller's Initials _____

FloridaRealtors-FloridaBar-ASIS-5  Rev.4/17 © 2017 Florida Realtors  and The Florida Bar.  All rights reserved.
Serial#: 017546-800161-4418989

Electronically Signed using eSignOnline™ [ Session ID  6047c01b-214a-4e10-a767-597123461972 ]

Authentisign ID: 5ADC2D6A-92FA-4CF3-BA66-D4E128AA27C8

109 (v) If Buyer fails to timely deliver either notice provided in Paragraph 8(b)(iii) or (iv), above, to Seller prior to
110 expiration of the Loan Approval Period, then Loan Approval shall be deemed waived, in which event this Contract
111 will continue as if Loan Approval had been obtained, provided however, Seller may elect to terminate this
112 Contract by delivering written notice to Buyer within 3 days after expiration of the Loan Approval Period.

113 (vi) If this Contract is timely terminated as provided by Paragraph 8(b)(iv)(2) or (v), above, and Buyer is not in
114 default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller
115 from all further obligations under this Contract.

116 (vii) If Loan Approval has been obtained, or deemed to have been obtained, as provided above, and Buyer
117 fails to close this Contract, then the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
118 default or inability to satisfy other contingencies of this Contract; or (2) Property related conditions of the Loan
119 Approval have not been met (except when such conditions are waived by other provisions of this Contract).

120 ☐ (c) Assumption of existing mortgage (see rider for terms).

121 ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

122
123* ## CLOSING COSTS, FEES AND CHARGES

124 **CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
125 **9.** **(a) COSTS TO BE PAID BY SELLER:**
127 • Documentary stamp taxes and surtax on deed, if any    • HOA/Condominium Association estoppel fees
128 • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)    • Recording and other fees needed to cure title
129 • Title search charges (if Paragraph 9(c)(iii) is checked)    • Seller's attorneys' fees
130 • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)    • Other:_____
131* If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
132 a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
133 Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall
134 pay such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.

135 **(b) COSTS TO BE PAID BY BUYER:**
136 • Taxes and recording fees on notes and mortgages    • Loan expenses
137 • Recording fees for deed and financing statements    • Appraisal fees
138 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)    • Buyer's Inspections
139 • Survey (and elevation certification, if required)    • Buyer's attorneys' fees
140 • Lender's title policy and endorsements    • All property related insurance
141 • HOA/Condominium Association application/transfer fees    • Owner's Policy Premium (if Paragraph
142 • Municipal lien search (if Paragraph 9(c)(ii) is checked)     9 (c)(iii) is checked.)
143 • Other:_____

144* **(c)  TITLE EVIDENCE AND INSURANCE:** At least __15__ (if left blank, then 15, or if Paragraph 8(a) is checked, then
145* 5) days from the Effective Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
146 licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title Commitment")
147 and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be obtained and
148 delivered to Buyer. The owner's title policy premium, title search and closing services (collectively, "Owner's Policy
149 and Charges") shall be paid, as set forth below. The title insurance premium charges for the owner's policy and any
150 lender's policy will be calculated and allocated in accordance with Florida law, but may be reported differently on
151 certain federally mandated closing disclosures and other closing documents. For purposes of this Contract "municipal
152 lien search" means a search of records necessary for the owner's policy of title insurance to be issued without exception
153 for unrecorded liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or
154 agency.

155 **(CHECK ONE):**
156 ☐ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
157 premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
158* endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
159 provider(s) as Buyer may select; or
160 X (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
161 services related to Buyer's lender's policy, endorsements and loan closing; or
162*
163

FloridaRealtors/FloridaBar-ASIS-5 Rev.4/17 © 2017 Florida Realtors  and The Florida Bar.  All rights reserved.
Serial#: 017546-800161-4418989

Electronically Signed using eSignOnline™ [ Session ID : 8047c01b-214a-4e10-a787-6971234972f ]

Authentisign ID: 5ADC2D6A-92FA-4CF3-BA66-D4E128AA27C8

164* ___ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller shall furnish a copy of a prior owner's policy of
165 title insurance, if available or applicable, or other evidence of title and pay fees for: (A) a continuation or update of
166 such title evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax
167 search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for
168* Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than
169 (d) ~~$200.00 (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent~~
170 ~~SURVEY: Each party shall timely deliver to the other party a survey of the Real Property~~
       (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
171 _____ at a cost not to exceed $_____. A home
172 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
173* appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
174* (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
175 ("public body") does not include a Condominium or Homeowner's Association) that are certified, confirmed and
176 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
177 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
178 imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
179 be paid in installments **(CHECK ONE):**
180 ☐(a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
181 Installments prepaid or due for the year of Closing shall be prorated.
182 x (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
183* IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
184 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
185* (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

186
187                                          **DISCLOSURES**
188

189

190 **10. DISCLOSURES:**
191 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
192 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
193 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
194 radon and radon testing may be obtained from your county health department.
195 (b) **PERMITS DISCLOSURE:** Seller, to the best of Seller's knowledge and belief, without independent investigation
196 does not know of any improvements made to the Property which were made without required permits or made
197 pursuant to permits which have not been properly closed. If Seller identifies permits which have not been
198 properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans,
199 written documentation or other information in Seller's possession, knowledge, or control relating to
200 improvements to the Property which are the subject of such open permits or unpermitted improvements.
201 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
202 desires additional information regarding mold, Buyer should contact an appropriate professional.
203 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
204 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
205 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"
206 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
207 Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
208 flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
209 through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
210* may terminate this Contract by delivering written notice to Seller within 20 (if left blank, then 20) days after
211 Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
212 obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
213 designation of Property. The National Flood Insurance Program may assess additional fees or adjust premiums
214 for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures (residential structures in which the insured
215 or spouse does not reside for at least 50% of the year) and an elevation certificate may be required for actuarial
216 rating.
217 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
218 required by Section 553.996, F.S.

Buyer's Initials [_____] _____          Page 4 of 12          Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-5  Rev.4/17 © 2017 Florida Realtors  and The Florida Bar.  All rights reserved.
Serial#: 017546-800161-4419989

Authentisign ID: 5ADC2D6A-92FA-4CF3-BA66-D4E128AA27C8

219  (f)  **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
220  mandatory.
221  (g)  **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
222  **CONTRACT      UNTIL      BUYER      HAS      RECEIVED      AND      READ      THE      HOMEOWNERS'**
223  **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**
224  (h)  **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
225  PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED
226  TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
227  IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN
228  HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT
229  THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.
230  (i)  **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if Seller
231  is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller
232  shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller is not a "foreign
233  person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status, under penalties of
234  perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD V for further
235  information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax advice regarding their
236  respective rights, obligations, reporting and withholding requirements pursuant to
237  FIRPTA.
238  (j)  **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which
239  are not readily observable and which have not been disclosed to Buyer. Except as provided for in the
240  preceding sentence, Seller extends and intends no warranty and makes no representation of any type, either
241  express or implied, as to the physical condition or history of the Property. Except as otherwise disclosed in
242  writing Seller has received no written or verbal notice from any governmental entity or agency as to a
243  currently uncorrected building, environmental or safety code violation.  SEE RIDER A attached hereto and
244  incorporated herein by reference.

**PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

245  **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
246  Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS
247  IS Maintenance Requirement").

248  **12. PROPERTY INSPECTION; RIGHT TO CANCEL:**
249*  (a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have __~~10~~__ (if left blank, then 15)*  15
250  *days after Effective Date ("Inspection Period") within which to have such inspections of the Property*
251  *performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole*
252  *discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering*
253  *written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely*
254  *terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall*
255  *be released of all further obligations under this Contract; however, Buyer shall be responsible for*
256  *prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting*
257  *from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the*
258  *preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to*
259  *terminate granted herein, Buyer accepts the physical condition of the Property and any violation of*
260  *governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to*
261  *Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all*
262  *repairs and improvements required by Buyer's lender. If the Buyer shall fail to close, through no fault*
*of the Seller all improvements and/or repairs performed by the Buyer shall become the sole property*
*of the Seller.*
263  (b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior
264  to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and
265  follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal
266  Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS
267  Maintenance Requirement and has met all other contractual obligations.
268  (c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** DELETED

Buyer's Initials _____        Page 5 of 12        Seller's Initials _____

Authentisign ID: 5ADC2D6A-92FA-4CF3-BA66-D4E128AA27C8

274
275   (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** DELETED.
276                          **ESCROW AGENT AND BROKER**
277
278
279
280
281   **13. ESCROW AGENT: In the event of a dispute, the deposit shall be held by the Bankruptcy Court pending
      resolution. The Bankruptcy Court for the District of Massachusetts shall maintain exclusive jurisdiction to
      resolve any disputes..**
282   This Paragraph 13 shall survive Closing or earlier termination of this Contract.
283   **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
284   square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
285   professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
286   and the transaction contemplated by this Contract..
323                          **DEFAULT AND DISPUTE RESOLUTION**
324   **15. DEFAULT:**
325   (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
326      including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
327      for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
328      in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under
329      this Contract, or Seller, at Seller's option, may,  proceed to enforce Seller's
330      rights under this Contract.
331   (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
332      reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
333      Buyer may elect to receive return of Buyer's Deposit or may seek specific
334      performance.
335   This Paragraph 15 shall survive Closing or termination of this Contract.
336   **16. DISPUTE RESOLUTION: The Bankruptcy Court for the District of Massachusetts shall maintain exclusive
      jurisdiction to resolve any disputes. .**
337   **17. ATTORNEY'S FEES; COSTS:** DELETED.
356                  **STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**
357   **18. STANDARDS:**
358   **A. TITLE:**
359   (i)  **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
360      Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
361      be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
362      or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
363      in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
364      subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
365      prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
366      Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
367      entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
368      10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
369      subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
370      addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES.** If there exists at Closing
371      any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall
372      be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance
373      with law.
374   (ii)  **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
375      in writing specifying defect(s), if any, that render title unmarketable. Seller shall have 30 days ("Cure Period") after
376      receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
377      shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
378      written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
379      Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
380      Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,



Authentisign ID: 5ADC2D6A-92FA-4CF3-BA66-D4E126AA27C8

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

383  deliver written notice to Seller: (a) requesting an extension to the Cure Period for a specified period not to exceed 120
384  days within which Seller may, in Seller's sole discretion, choose to continue to use reasonable diligent effort to remove
385  or cure the defects ("Extended Cure Period"); or
386  (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
387  passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
388  electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
389  further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects,
390  and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the
391  Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.
392  **B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
393  encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
394  governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
395  such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
396  than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
397  Survey shall constitute a title defect, subject to cure obligations of STANDARD A above.
398  **C.  INGRESS AND EGRESS:** Seller represents to the best of Seller's knowledge and belief, without independent
399  investigation, that there is ingress and egress to the Real Property and title to the Real Property is insurable in
400  accordance with STANDARD A without exception for lack of legal right of access.
401  **D.  LEASE INFORMATION: DELETED.**
402  **E.  LIENS: DELETED.**
403  **F.  TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract**
404  **subject to Bankruptcy Court approval.** Other than time for acceptance and Effective Date as set forth in
405  Paragraph 3, any time periods provided for or dates specified in this Contract, whether preprinted, handwritten,
406  typewritten or inserted herein, which shall end or occur on a Saturday, Sunday, or a national legal holiday (see 5
407  U.S.C. 6103) shall extend to 5:00 p.m. (where the Property is located) of the next business day.
408  **G.  FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
409  liable to each other for damages so long as performance or non-performance of the obligation, or the availability
410  of services, insurance or required approvals essential to Closing, is disrupted, delayed, caused or prevented by
411  Force Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of
412  God, unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable
413  diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods,
414  including Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer
415  prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent
416  performance under this Contract more than 30 days beyond Closing Date, then either party may terminate this
417  Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing
418  Buyer and Seller from all further obligations under this Contract.
419  **H.  CONVEYANCE:** Seller shall convey marketable title to the Real Property by Special Warranty deed,
420  trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to
421  matters described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer,
422  be

Buyer's Initials _____          Page 8 of 12          Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-5  Rev.4/17 © 2017 Florida Realtors   and The Florida Bar.  All rights reserved.

Authentisign ID: 5ADC2D6A-92FA-4CF3-BA66-D4E126AA27C8

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

439  transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
440  Contract.
441  **I.  CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
442  (i)  **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
443  the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
444  is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
445  insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
446  means, Seller shall be under no obligation to be physically present for the Closing.
447  (ii)  **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
448  sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien
449  affidavit(s), owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall not be required
450  to attend Closing but may execute documents remotely provided the original deed is delivered for Closing. Seller
451  shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract, if any. Buyer
452  shall furnish and pay for, as applicable, the survey, flood elevation certification, and documents required by
453  Buyer's lender.
454  (iii)  **FinCEN GTO NOTICE. If Closing Agent is required to comply with the U.S. Treasury Department's**
455  **Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Orders ("GTOs"), then Buyer**
456  **shall provide Closing Agent with the information related to Buyer and the transaction contemplated by**
457  **this Contract that is required to complete IRS Form 8300, and Buyer consents to Closing Agent's**
458  **collection and report of said information to IRS.**
459  (iv)  **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment
460  provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
461  procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all**
462  **closing funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
463  **J.  ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
464  for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
465  escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
466  for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault
467  of Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days
468  from date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit
469  and all Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
470  simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
471  convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely
472  demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening
473  defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
474  **K.  PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as
475  of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
476  (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
477  and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if
478  assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may
479  be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will
480  be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated
481  based on current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's
482  assessment is available, taxes will be prorated based upon such assessment and prior year's millage. If current
483  year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed
484  improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence
485  on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable
486  assessment to be agreed upon between the parties, failing which, request shall be made to the County Property
487  Appraiser for an informal assessment taking into account available exemptions. In all cases, due allowance shall
488  be made for the maximum allowable discounts and applicable homestead and other exemptions. A tax proration
489  based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This
490  STANDARD K shall survive Closing.
491  **L.  ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
492  shall, upon reasonable notice, provide utilities service information and access to Property for appraisals and
493  inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.
494  **M.  RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
495  ("Casualty Loss") and cost of restoration

Buyer's Initials _____        Page 9 of 12        Seller's Initials _____

Authentisign ID: 5ADC2D6A-92FA-4CF3-BA66-D4E126AA27C8

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

496 exceeds 1.5% of
497 Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
498 Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
499 with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.
500 **N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
501 Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
502 in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
503 cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
504 upon, nor extended or delayed by, such Exchange.
505 **O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT**
506 **EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall
507 be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever
508 the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to
509 the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as
510 if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic
511 (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon
512 shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures,
513 as determined by Florida's Electronic Signature Act and other applicable laws.
514 **P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
515 of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
516 representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
517 in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
518 to be bound by it.
519 **Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
520 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
521 rights.
522 **R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
523 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.
524 **S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or**
525 **received, including Deposits, have become actually and finally collected and deposited in the account of**
526 **Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents**
527 **may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**
528 **T. RESERVED.**
529 **U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
530 of Florida but venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
531 United States Bankruptcy Court for the District of Massachusetts.
532 **V. FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
533 Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15%
534 of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service
535 (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
536 from the IRS authorizing a reduced amount of withholding.
537 (i)  No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
538 provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
539 stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
540 home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
541 shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
542 to the IRS.
543 (ii) If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
544 or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
545 reduced sum required, if any, and timely remit said funds to the IRS.
546 (iii) If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
547 provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
548 received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller
549 on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
550 escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the

Electronically Signed using eSignOnline™ [ Session ID : 8047c01b-214a-4e10-a767-8971234972f ]

Authentisign ID: 5ADC2D6A-92FA-4CF3-8A66-D4E128AA27C8

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

553 parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
554 directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
555 (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
556 transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the
557 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
558 disbursement in accordance with the final determination of the IRS, as applicable.
559 (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
560 8288 and 8288-A, as filed.
561 **W. RESERVED**
562 **X. BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
563 *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
564 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
565 *subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer. This*
566 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall*
567 *survive Closing.*

### ADDENDA AND ADDITIONAL TERMS

569* 19. **ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into
570 this Contract (**Check if applicable**):

- [ ] A. Condominium Rider
- [ ] B. Homeowners' Assn.
- [ ] C. Seller Financing
- [ ] D. Mortgage Assumption
- [ ] E. FHA/VA Financing
- [ ] F. Appraisal Contingency
- [ ] G. Short Sale
- [ ] H. Homeowners/Flood Ins.
- [ ] I. RESERVED
- [ ] J. Interest-Bearing Acct.

- [ ] K. RESERVED
- [ ] L. RESERVED
- [ ] M. Defective Drywall
- [ ] N. Coastal Construction Control Line
- [ ] O. Insulation Disclosure
- [ ] P. Lead Paint Disclosure (Pre-1978)
- [ ] Q. Housing for Older Persons
- [ ] R. Rezoning
- [ ] S. Lease Purchase/ Lease Option

- [ ] T. Pre-Closing Occupancy
- [ ] U. Post-Closing Occupancy
- [ ] V. Sale of Buyer's Property
- [ ] W. Back-up Contract
- [ ] X. Kick-out Clause
- [ ] Y. Seller's Attorney Approval
- [ ] Z. Buyer's Attorney Approval
- [ ] AA. Licensee Property Interest
- [ ] BB. Binding Arbitration
- [ ] Other: _____
  _____
  _____

571* 20. **ADDITIONAL TERMS:** Century 21 Real Estate Corporation will collect a $395.00 professional fee at Closing from the
572 Buyer.
573 Seller agrees to contribute $5,000.00, at the time of Closing, from Seller's proceeds to the Buyer's closing costs, pre-
574 paids and escrows.
575 The Buyer acknowledges receipt of the Governing Documents for the Homeowner's Association as of this day and shall
576 have three (3) days to review the same and cancel this Agreement should they not meet Buyer's reasonable
577 satisfaction.
578 If Homeowner's Association approval is required, this Agreement is contingent upon Buyer being approved by the
579 Association no later than five (5) days prior to Closing. If the Buyer is not approved within the stated time period, this
580 Agreement shall terminate and Buyer shall be refunded the deposit, thereby releasing the Buyer and Seller from all
581 further obligations under this Agreement.
582 If special assessments levied or pending exist as of the Effective Date Seller will pay assessment in full prior to or at the
583 time of Closing from Seller's proceeds.

### COUNTER-OFFER/REJECTION

585 [ ] Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms
586 and deliver a copy of the acceptance to Seller).
587 [ ] Seller rejects Buyer's offer.

589* Buyer's Initials _____    Page **11** of **12**    Seller's Initials _____
590 FloridaRealtors/FloridaBar-ASIS-5  Rev.4/17 © 2017 Florida Realtors and The Florida Bar.  All rights reserved.

Serial#: 017546-800161-4418989

Electronically Signed using eSignOnline™ [ Session ID : 8047c01b-2144-4e10-a767-597123489721 ]

Authentisign ID: 5ADC2D6A-92FA-4CF3-BA66-D4E128AA27C8

592 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
593 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

594 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

595 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
596 *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
597 *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
598 *interested persons.*

599 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A
600 BLANK TO BE COMPLETED.

601* Buyer: *Gary A Anderson*                                              Date: _____05/13/2019_____
       5/13/2019 12:07:11 PM EDT

602* Buyer: _____                          Date: _____

603* Seller: *Stephen B. Dורn, Trustee*                              Date: _5/13/19_

604* Seller: _____                         Date: _____

605 Buyer's address for purposes of notice              Seller's address for purposes of notice
606* _____          _____
607* _____          _____
608* _____          _____

609 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
610 entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
611 Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
612 agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
613 retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of
614 compensation made by Seller or Listing Broker to Cooperating Brokers.

615* _____Audrey Barr-Keise_____              _____Lamar Fisher_____
616 **Cooperating Sales Associate, if any**         **Listing Sales Associate**

617* __Century 21 City Real Estate__              ___Fisher Auction Co. Inc._____
618 **Cooperating Broker, if any**                    **Listing Broker**

Buyer's Initials _____                Page **12** of 12                Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-5    Rev.4/17 © 2017 Florida Realtors and The Florida Bar. All rights reserved.
Serial#: 017546-800151-4418989

Electronically Signed using eSignOnline™ [ Session ID : 8047c01b-214a-4e10-a767-637123180973 ]

Authentisign ID: 5ADC2D6A-92FA-4CF3-BA66-D4E128AA27C8

RIDER A
TO
PURCHASE AND SALES AGREEMENT

between

Stephen B. Darr, Chapter 11 Trustee of TelexFree, LLC, TelexFree, Inc., and TelexFree
Financial, Inc.

And
Gary A. Anderson

Property Location:

4506 San Mellina Drive, Coconut Creek, FL 33073

1.  Buyer acknowledges that the purchase and sale agreement (the "Agreement"),
    time for performance ("Closing") and the sale of the real estate in question are
    subject to the approval and final order of the United States Bankruptcy Court for
    the District of Massachusetts (the "Bankruptcy Court").

2.  Deposits shall be held by Seller in a non-interest bearing account.

3.  The obligations of Seller are conditioned upon the approval of the Bankruptcy
    Court.  The Bankruptcy Court approval process allows a party in interest to file
    an objection to the sale or a qualifying counteroffer.  Promptly after execution of
    the Agreement, the Trustee shall file with the Bankruptcy Court an appropriate
    Motion and Notice of Intended Sale in accordance with 11 U.S.C. §363 and the
    Local Rules of the Bankruptcy Court.  Buyer shall be provided with copies of all
    pleadings pertinent to the sale.

4.  If a qualifying counteroffer is filed, the original offeror (Buyer under the terms of
    this Agreement) will be required to be present at the hearing on the sale, in person
    or by telephone, if they remain interested in acquiring the Premises and will be
    afforded an opportunity to submit a further bid in order to purchase the Premises.

5.  This Agreement shall be subject to the following Bidding Procedures:

    a.    Buyer and Seller acknowledge that this Agreement is being entered into
    subject to another party offering a higher and better bid ("Superior Bid") for the
    Premises.  The Buyer and Seller acknowledge that the auction rules shall be as set
    forth in a Notice of Sale and that Seller shall provide notice in the manner
    contained therein which sets forth the rules for:  (x) announcing the time and date
    of the hearing to approve the Sale Motion (the "Sale Hearing"), and (y) inviting
    the submission of a Superior Bid for the Premises (the "Competitive Bid
    Procedure").  Subject to Bankruptcy Court approval, the terms of the Competitive
    Bid Procedure shall include, but not be limited to the following: (i) at least two (2)
    Business Days prior to the Sale Hearing, or within such other time as may be
    established by the Court, any competing bidder shall have executed a definitive
    purchase and sale agreement substantially consistent with the terms of this
    Agreement (except as for Purchase Price) which Seller deems to contain a

Authentisign ID: 5ADC2D6A-92FA-4CF3-BA66-D4E128AA27C8

Superior Bid, and which agreement shall be valid, binding and enforceable upon approval of the Bankruptcy Court; and (ii) a competing bid shall be accompanied by a certified check or cash deposit in the amount of $25,000.00 which shall be held by Seller and, if such competing bid is accepted and approved by the Bankruptcy Court, shall be applied toward the Purchase Price, or, if such competing bid is not accepted, shall be refunded in full to such competing bidder after the Sale Hearing (unless such competing bidder has breached or violated its agreement with Seller);

b.      A competing bid must be at least five percent (5%) greater than the Purchase Price, or $504,000.00;

c.      A competing bid shall not be subject to any further due diligence by the competing bidder and shall not contain any other conditions precedent to the consummation of the purchase other than those identical to the conditions precedent contained in this Agreement;

d.      A competing bid must state that the competing bidder is prepared to consummate the purchase within the same time period provided by this Agreement; and

e.      In the event that Seller receives a competing bid that meets the Competitive Bid Procedure set forth above and is otherwise acceptable to Seller, Seller shall conduct a sealed bid auction (the "Auction") at the Sale Hearing under the direction and supervision of the Bankruptcy Court. No person or entity other than Buyer or a bidder that has made a competing bid that meets the Competitive Bid Procedure set forth above in sub-section (a) and (b) shall be entitled to participate in the Auction. The Auction shall be subject to such other terms and conditions as the Bankruptcy Court shall require.

6.    In the event the Buyers are outbid at the Auction and the sale to the third party is consummated, the Trustee shall promptly cause to be returned to the Buyer any deposit.

7.    The Trustee conveys the Premises without warranty or representation, as is, and where is.

8.    Any disputes respecting the deposit and any other rights and obligations of the parties shall be adjudicated in the United States Bankruptcy Court for the District of Massachusetts.

9.    Notwithstanding any provision in the Agreement to the contrary the Seller shall not file for Bankruptcy Court approval until such time as the Buyer's due diligence has been completed pursuant to Paragraph 12 of the Agreement and the second deposit has been received by the Seller. Buyer acknowledges that the Bankruptcy Court approval process may take 30-40 days to complete from the date of filing and that the Closing Date is expressly conditioned upon obtaining said approval.

[SIGNATURES TO FOLLOW]

Authentisign ID: 5ADC2D6A-92FA-4CF3-BA66-D4E128AA27C8

SELLER:

*Stephen B. Darr, Trustee*

BUYER:

Authenti

*Gary A Anderson*

5/13/2019 12:07:16 PM EDT

**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Chapter 11 |
| | ) | |
| TELEXFREE, LLC , | ) | Case No. 14-40987-MSH |
| TELEXFREE, INC., | ) | Case No. 14-40988-MSH |
| TELEXFREE FINANCIAL, INC., | ) | Case No. 14-40989-MSH |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF INTENDED PRIVATE SALE, DEADLINE FOR OBJECTIONS AND
COUNTEROFFERS, AND FINAL HEARING ON MOTION BY CHAPTER 11
TRUSTEE FOR AUTHORITY TO SELL REAL PROPERTY BY PRIVATE SALE,
FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES
(COCONUT CREEK, FLORIDA)**

        **PLEASE TAKE NOTICE** that pursuant to 11 U.S.C. § 363, Fed. R. Bankr. P.
2002(a)(2), 6004, and in accordance with the *Motion By Trustee For Authority To Sell Real
Property By Private Sale Free And Clear Of Liens, Claims, Interests And Encumbrances* ("Sale
Motion"), Stephen B. Darr, the duly appointed Chapter 11 trustee (the "Trustee") of the
bankruptcy estates (the "Estates") of TelexFree, LLC, TelexFree, Inc., and TelexFree Financial,
Inc. (collectively, the "Debtors" or "TelexFree"), intends to sell all of the Estates' right, title and
interest in certain real property located at 4506 San Mellina Drive, Coconut Creek, Florida
("Real Property") to Gary A. Anderson or his nominee ("Purchaser") for the sum of $480,000.00
("Purchase Price"). The terms of the sale are more particularly described below, and are also
disclosed in the Sale Motion and the purchase and sale agreement ("Sale Agreement") attached
to the Sale Motion. Copies of the Sale Motion and the Sale Agreement are available from
counsel to the Trustee upon request.

## I.   TERMS OF THE SALE

        1.        The Trustee seeks Court approval to convey the Real Property to the Purchaser, or
to the nominee designated by the Purchaser.

        2.        The Trustee intends to sell the Real Property free and clear of liens, claims,
encumbrances and interests, including Homestead rights, except as to restrictions, easements,
and limitations as provided in the Sale Agreement. Pursuant to the Sale Agreement, the Real
Property is to be sold in "as is" and "where is" condition. Further, the Trustee is not making any
representations or warranties whatsoever, either express or implied, with respect to the Real
Property.

        3.        In accordance with the terms of the Sale Agreement, the Purchaser shall pay to
the Trustee on the closing date which shall be five days after Bankruptcy Court approval of the

1

sale but no earlier than June 14, 2019 ("Closing Date"), the Purchase Price for the Real
Property, in the amount of $480,000.00 which shall be paid as follows:

    (i)    $ 10,000.00 paid as a deposit in connection with the execution of the Sale
Agreement;

    (ii)    $384,000.00 through conventional financing; and

    (iii)    $86,000.00 to be paid at the time of delivery of the deed.

## II.    THE REAL PROPERTY SHALL BE SOLD FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

4.    Pursuant to 11 U.S.C. § 363(f), the Sale Motion and the Sale Agreement, the Real
Property is to be sold to the Purchaser free and clear of liens, claims, interests and encumbrances
whatsoever, known or unknown, including without limitation those noted in the Sale Motion.

5.    All valid liens, claims or encumbrances shall attach to the proceeds of the sale of
the Real Property. The validity and enforceability of any contested lien shall be determined by
the Bankruptcy Court after due notice and hearing.

6.    The Trustee has requested that the Bankruptcy Court determine, at the Sale
Hearing (as defined below), that the successful bidder or bidders of the Real Property be
deemed to be "good faith" purchaser(s) providing to the Trustee consideration for the Real
Property which constitutes payment of "value" pursuant to Section 363(m) of the Bankruptcy
Code.

## III.    DEADLINES FOR COUNTEROFFERS, OBJECTIONS TO THE SALE MOTION AND HEARING THEREON

7.    A HEARING ON THE SALE MOTION, ANY OBJECTIONS THERETO AND
ANY COUNTEROFFERS FOR THE REAL PROPERTY, ARE SCHEDULED TO TAKE
PLACE ON _____ ("SALE HEARING") BEFORE THE
HONORABLE MELVIN S. HOFFMAN, UNITED STATES BANKRUPTCY JUDGE, United
States Bankruptcy Court, John W. McCormack Post Office and Court House, 5 Post Office
Square, Suite 1150, Boston, MA 02109-3945 ("COURT").  ANY PARTY WHO HAS FILED
AN OBJECTION TO THE SALE MOTION OR COUNTEROFFER FOR THE PURCHASE
OF THE REAL PROPERTY IS EXPECTED TO BE PRESENT AT THE SALE HEARING,
FAILING WHICH THE OBJECTION MAY BE OVERRULED OR THE COUNTEROFFER
STRICKEN. IF NO OBJECTION TO THE SALE MOTION OR COUNTEROFFER IS
TIMELY FILED, THE COURT, IN ITS DISCRETION, MAY CANCEL THE SALE
HEARING AND APPROVE THE SALE MOTION.

8.    Any objection to the Sale Motion must be in writing and filed with the Clerk,
United States Bankruptcy Court, John W. McCormack Post Office and Court House, 5 Post
Office Square, Boston, MA 02109-3945 on or before _____
("Objection Deadline"). A copy of any objection must be also served upon undersigned counsel

to the Trustee so as to be received on or before the Objection Deadline. Any objection must state with particularity the grounds for the objection and the interest that the objecting party has in these proceedings, and shall be governed by Fed. R. Bankr. P. 9014.

## IV.    COUNTEROFFER PROCEDURES

9.    THROUGH THIS NOTICE, THE TRUSTEE HEREBY SOLICITS COUNTEROFFERS FOR THE REAL PROPERTY. Any and all counteroffers must be in an amount not less than $504,000.00. All counteroffers must be accompanied by a deposit equal to $50,000 in the form of a certified or bank check, or cash, made payable to the Trustee (the "Deposit") and delivered to counsel to the Trustee on or before _____ (the "Counteroffer Deadline").

10.    In the event of a timely counteroffer, each interested bidder shall have an opportunity to submit an additional sealed bid for the Real Property at the hearing on the sale before the Bankruptcy Court.

11.    Any counteroffer must be stated in writing and filed with the Clerk, United States Bankruptcy Court, John W. McCormack Post Office and Court House, 5 Post Office Square, Boston, MA 02109-3945 on or before the Counteroffer Deadline.   A copy of any counteroffer must be also served upon the undersigned counsel to the Trustee so as to be received on or before the Counteroffer Deadline.

12.    Counteroffers must include an executed purchase and sale agreement upon terms substantially consistent or more favorable than the terms of the Sale Agreement. Counteroffers shall not be subject to further due diligence, may not contain any other conditions precedent to the consummation of the sale other than those provided in the Sale Agreement, and must state that the competing bidder is prepared to consummate the purchase of the Real Property within the same time period provided by the Sale Agreement.

## V.    SALE CLOSING

13.    The Deposit will be forfeited to the estate if the highest bidder fails to complete the sale by the date ordered by the Court.  The Trustee has requested that, if the sale is not completed by the highest bidder, the Court approve the sale of the Real Property to the next highest bidder.

14.    You may receive a complete copy of the Sale Motion at the address set forth below.  Any questions concerning the Sale Motion should be addressed to the undersigned.

STEPHEN B. DARR,
CHAPTER 11 TRUSTEE,
By his attorneys,

_____
Andrew G. Lizotte (BBO #559609)
Murphy & King, Professional Corporation
One Beacon Street
Boston, MA  02108
Telephone:  (617) 423-0400
Facsimile:  (617) 423-0498
Email: ALizotte@murphyking.com

Dated:  June 11, 2019
759344